THE MATTHIESSEN & HEGELER ZINC COMPANY

*v.*

THE CITY OF LA SALLE.

*Filed at Ottawa September 21, 1885—Re-filed August 13, 1886.*

1. DEDICATION *for streets—as to the mode of dedication—and the character of title vested — and herein, of lands laid out and platted for a town by the State.* The acknowledgment and recording of a plat laying out land into lots and blocks, showing thereon the streets and alleys, by the statute operates as a dedication of the fee in the streets and alleys to the municipal corporation in which they are situate, the same as if made by a conveyance in the ordinary form.

2. And when land is laid out and platted for a town by the State, holding the legal title, the title or fee in the streets will vest in the town or village, where incorporated, the same as if the land had been laid out by a private owner. The corporation in either case holds the title for the use of the public, as an agency for the State government.

3. SAME—*determinable character of the fee vested in the corporation—reverter in case of abandonment, and to whom.* The fee vested in the corporation by a statutory dedication is a qualified, base or determinable fee, which may continue forever, but is liable to be determined by some event or act circumscribing its continuance, as, for instance, by the vacation of the plat, or the entire and permanent abandonment and disuse of the street by the public and abutting lot owners.

4. Upon the entire and permanent abandonment and disuse of the streets on the vacation of the plat, the property in the streets will revert to the dedicator, and not to the abutting lot owners, as such. A conveyance of a lot abutting a street so dedicated, does not carry title to the center of the street, but only to the street.

5. STREETS—*rights of abutting lot owners, as to the use of the streets —mining under them.* A party owning city lots has not the right to make a subterranean passage from one to another through the underlying soil, etc., of a public street, the fee of which is not in him, in order to mine and remove minerals, etc., even though no injury may thereby result to the street, as such.

6. The only trust in favor of a private party when there has been a statutory dedication of the streets is, that the street shall be kept open for the benefit of abutting lot owners who have bought or sold on the faith of their existence and continuance as a means of access to their lots.

7. SAME—*as to legal or equitable character of the right.* And although a court of equity will enjoin a deprivation of this right, it is in its nature

legal, and damages may be recovered at law for its invasion. But whether this right rests upon the doctrine of estoppel *in pais* or that of implied covenants, it has relation only to the use and enjoyment of streets, as such, without reference to the ownership of the soil.

8. APPEAL—*whether freehold involved—bill to enjoin threatened actions of trespass for mining under streets.* A bill seeking to enjoin a city from bringing threatened actions of trespass against the complainant for making entries through the soil under the streets, for the purpose of mining and removing coal from under his lots abutting such streets, does not directly involve a freehold, and an appeal from an order granting the injunction is properly taken to the Appellate Court.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of La Salle county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Bill was filed in the circuit court, by the Matthiessen & Hegeler Zinc Company, against the city of La Salle, and some individuals, with whom the city had made a contract, granting them the right to mine coal underlying the streets and alleys. The complainant claims, as the grantee of the same, coal under its lots described in the bill, and the right to run entries across such streets and alleys to reach the coal on the lots, through its coal shaft located on the other side of such streets and alleys. The incorporation of the city of La Salle is alleged to have been after the date of the recording of the plat, and it is alleged that upon its incorporation the title to the streets and alleys became and was vested in the city for the uses and purposes designated by the canal trustees; that the city, by virtue of such dedication, was vested with the right to use such streets and alleys as public highways, but not for any other purpose whatever; that the coal can be mined to make the entries across the streets and alleys without in any manner interfering with their usefulness as highways; that the contract between the city and the individuals was not valid, and that the latter have no right, by virtue of it, to remove the coal under the streets and alleys, and that

they threaten to do so, to the great and irreparable injury of complainant; that the city claims to own the coal under the streets and alleys, with full power to sell and dispose of the same, and threatens to bring, from day to day, actions of trespass against complainant for mining, and interfering with the coal, and that this will lead to a great multiplicity of suits; that complainant has mined some portion of the coal under the streets and alleys, for the purpose of making the entries mentioned, and that it proposes to continue to do so, and that the city, and the persons so contracting, threaten to interfere to prevent it, and also to bring suits, from day to day, against complainant, therefor. The prayer of the bill is, that complainant may have the right, without obstruction, to run the entries and passage ways under and along the streets, and that defendant may be enjoined, etc.

There is no claim that the relief at common law is adequate, and the only questions are those heretofore stated. There was an answer by the city, admitting the making of the contract as alleged, and conceding that it was *ultra vires* and invalid, and to all the rest of the bill the city demurred. There was no answer by the individuals. The demurrer was overruled, and the decree recites the facts proved, substantially as alleged, and enjoins the defendants from interfering to hinder and prevent complainant from making the entries and passages, unless necessary and proper to prevent injury to streets or highways, and from bringing actions at law against complainant for so doing, except for injuries to the streets or highways. On appeal to the Appellate Court for the Second District, this decree was, by the judgment of that court rendered at its May term, 1884, reversed, and the cause was remanded, with directions to the circuit court of La Salle county to sustain the demurrer of the city of La Salle, dissolve the injunction against the city, and dismiss the bill so far as the relief asked is based upon the allegations to which the demurrer is so sustained, and it was further adjudged that in

all other respects the decree of the circuit court be affirmed. This appeal is from that judgment.

Messrs. BULL, STRAWN & RUGER, and Messrs. LELAND & GILBERT, for the appellant.

Mr. G. S. ELDRIDGE, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We do not deem it expedient to now reconsider the construction given the statute in relation to the platting of towns, in *Canal Trustees* v. *Haven*, 11 Ill. 554. That decision was rendered, after full argument and mature consideration, in June, 1850,—thirty-five years ago. The next year after it was rendered,—in November, 1851,—in *Hunter* v. *Middleton*, 13 Ill. 50, the rule it declares was attacked in argument by able counsel, and the court was asked to reconsider and over-rule it; and hold as now contended by counsel for appellant; but the court were not convinced by the argument that the rule was wrong, and expressly then declared that it was adhered to. The court said: "The statute in substance declares that these acts of the proprietor shall operate to vest the fee in the corporation, in trust for the uses and purposes of the public. By making and recording the plat, he voluntarily parts with the title to the streets and alleys, and transfers it to the corporation. The legal effect is precisely the same as if he had made a conveyance directly to the corporation. The latter holds the legal estate for the benefit of the public. The title may, perhaps, revert to the former owners on the destruction of the corporation, or upon the abandonment of the ground for the purposes of streets or alleys; but until the estate is thus defeated, the fee is as completely out of him as if he had made an absolute and unconditional conveyance. While the fee continues in the corporation, he has no greater interest in the streets and alleys than any other person,—the

right of passage over them. Having neither the legal title nor the exclusive right of possession, he can not bring trespass for any injury to the soil or freehold. He has no title to be assailed, no possession to be invaded." This doctrine has been either directly repeated, or assumed to be the law, in the following cases: *Manly* v. *Gibson*, 13 Ill. 312; *Moses* v. *Pittsburgh, Fort Wayne and Chicago Railroad Co.* 21 id. 516; *Waugh* v. *Leech*, 28 id. 488; *Stephani* v. *Brown*, 40 id. 428; *City of Chicago* v. *McGinn*, 51 id. 266; *Carter* v. *City of Chicago*, 57 id. 283; *Indianapolis, Bloomington and Western Railroad Co.* v. *Hartley*, 67 id. 439; *St. John* v. *Quitzow*, 72 id. 336; *Gebhardt* v. *Reeves*, 75 id. 301; *Stetson* v. *Chicago and Evanston Railroad Co.* id. 74; *Stack* v. *City of East St. Louis*, 85 id. 377; *City of Chicago* v. *Rumsey*, 87 id. 348; *Cairo and Vincennes Railroad Co.* v. *The People*, 92 id. 170; *Village of Brooklyn* v. *Smith*, 104 id. 429, and in still later cases.

In the *Stetson case* it was sought to enjoin the construction of a railroad in the street. The court said, in denying the right of the abutting lot owner: "The principle is, the adjoining proprietor has no interest in the fee of the street, and therefore can not recover for an injury to it. Where the fee of the street, however, remains in the abutting land owner, a recovery has been permitted." In the case of *Brooklyn* v. *Smith*, which was decided in 1882, the court repeated, that one who had made and acknowledged a plat, with streets marked thereon, retained in the streets no interest to descend to heirs or to be conveyed. "The acknowledgment," says the court, "by him, and recording of the original plat, had all the force of an express grant to convey from him the land embraced by Water street, and vest it in the corporation of the village,"—referring to *Canal Trustees* v. *Haven, supra*. "The corporation was the owner in fee of the streets." This language was not only pertinent, but necessary to a decision of the question before the court.

The public welfare forbids that a rule so long established and so firmly adhered to, should be regarded as open to discussion or question. If it is to be changed, it must be by the legislature.

But it is objected that the statute in regard to laying out and platting towns has no application to the State, and that this was, therefore, but a common law dedication. This objection is answered by *Chicago* v. *Rumsey, supra,* where a like objection was interposed, and held to be untenable. Without at all conceding that the reasoning there, upon which the ruling on this point was predicated, is unsatisfactory, there is another obvious and satisfactory line of reasoning which reaches the same conclusion. While the statute in relation to town plats does, not name the State, it contains specific and full directions for the laying out and platting, towns by "county commissioners, and other persons wishing to lay out towns, or additions thereto, in this State." (See Stat. 1833, p. 599.) When the several sections in relation to the laying out of towns by the commissioners of the Illinois and Michigan Canal were passed, that statute was in force, and there was no other statute in force in relation to the same subject. By section 32 of the act for the construction of the Illinois and Michigan Canal, approved January 9, 1836, the commissioners are empowered "to examine the whole canal route, and select such places thereon as may be eligible for town sites, and cause the same to be laid off into town lots." And by section 7 of an act to amend the above named act, approved March 2, 1837, it is provided: "The said commissioners,"—*i. e.*, canal commissioners,—"shall have power to cause surveys of such town sites as they may select, to be laid out by such person or persons as they may think proper. The plats of such towns, certified by such person or persons so employed, and said commissioners, shall be recorded in the recorder's office in the county where such town is situated; and such plat, so certified and recorded, or an attested copy thereof, shall be

evidence in any court of law or equity in this State; and plats
of such town sites, subdivisions of sections or surveys, which
have been made and certified by the former commissioners,
shall also be recorded in the same manner, and have the
same validity, as aforesaid." · But what shall constitute a
"laying out" and a "platting," and of what facts the plat
shall be evidence, these sections do not undertake to declare.
The terms, "laying out" and "platting," as applied to towns,
are descriptive of legal steps for the creation of a town, and
the perpetuating of evidence of its creation, and their use
here plainly implies the existence of law defining or prescrib-
ing such steps. Such law can not be found in the common
law, and since the statute referred to is the only statute in
relation to the subject that has ever been in force, it must
have been intended by these sections to refer to it to ascer-
tain what shall constitute a "laying out" and "platting," and
of what facts the plat shall be evidence. These sections are,
therefore, *in pari materia* with that statute. Thus reading
them, it is only necessary that the plat shall be certified, as
was here done, by the persons laying out the town and the
commissioners, and when thus certified and recorded, it shall
have the force and effect of a town plat,—*i. e.*, as made, cer-
tified and acknowledged under the statute in relation to town
plats. And this is consistent with other legislation of a kin-
dred character, which provides that "all deeds, title papers,
and agreements and contracts affecting title to real estate,
executed under the seal of the board of canal commissioners,
shall be admitted to record without proof or acknowledgment
of the execution thereof." Purple's Stat. 488.

But it is again contended, conceding that we are right in
the views heretofore expressed, that inasmuch as by section
2, of chapter 145, of the Revised Statutes of 1874, it is pro-
vided that upon the vacation of any street, the lot or tract of
land immediately adjoining on either side shall extend to the
central line of such street, ·etc., the adjacent lot owners have

27—117 ILL.

a reversionary interest in the soil, which gives them a right to enter and take and appropriate the coal in the street. Waiving the question whether this act, though unconstitutional as respects cases where the dedicator was a private owner, is the law in cases like the present, where the dedication was by the State, it is enough to say, the adjacent lot owner does not have a reversion, but a possibility of reverter, only. The title vested in the town by the statutory dedication is absolutely for the purpose of the statutory trust until the street shall be subsequently vacated, when it will revert to the dedicator, or, it may be, in cases like the present, to the adjacent lot owner. Possibly, at some time in the future, there may be a reverter, but this is no reversion. 4 Kent's Com. (8th ed.) 372. It is too palpable for argument, that until there is a reverter, the lot owner can have no greater right to enter upon and appropriate the soil and minerals of the street to his personal use, than a stranger, because his right can only commence in the event and at the time that the right of the town has ended.

Waiving this, however, counsel further contend that the cases decided by this court recognize the existence of an equitable estate in the street, in the dedicator, distinct and apart from the estate, which passes by the dedication, and which equitable estate passes, by a conveyance of the abutting lots, to the grantee. Using the word "estate" in its strict technical sense, as seems intended, we do not so understand the cases, and, in our opinion, the contention can not be maintained. The *Stetson case*, as has been seen, is diametrically opposed to this position. The cases have held that the only trust in favor of a private party, where there has been a statutory dedication of streets, is, that the streets shall be kept open for the benefit of abutting lot owners who have bought on the faith of its existence and continuance as a means of access to their lots. (*City of Chicago* v. *Union Building Association*, 102 Ill. 379.) And although a court of equity will

enjoin the deprivation of this right, (*Carter* v. *City of Chicago, supra,*) yet the right, in its nature, is legal, and damages for its invasion may be recovered in an action at law. (*City of Pekin* v. *Brereton,* 67 Ill. 477; *Rigney* v. *Chicago,* 102 id. 81, and cases there cited.) Whether the right has its origin in the doctrine of estoppels *in pais,* as held in *Cincinnati* v. *White,* 6 Pet. 431, or in that of implied covenants, as held *In the matter of Lewis Street,* 2 Wend. 472, *Livingston* v. *Mayor,* 8 id. 85, and *Haynes* v. *Thomas,* 7 Ind. 38, it has necessarily relation only to the use and enjoyment of streets as such, without reference to the ownership of the soil in the streets. And no authority has been cited, and, in our opinion, none can be, holding that this right in the adjacent lot owner confers any power upon him to enter upon the manual possession of the soil or minerals in the street, to appropriate and use the same for his personal purposes.

The point is made, that owners of city lots have the right of subterranean passage from the one to the other side of the street. No authority is cited in favor of the position, and we think none can be. We think the position untenable. This certainly can not be claimed as an incident to the right resulting from the possibility of a reverter, and if we have successfully shown that the rights of abutting lot owners are simply to the access and use of the streets as such, it must follow that they have no right to construct subterranean passages. Doubtless the public, in proper cases, may construct or authorize the construction of subterranean passages for the accommodation of the public; but the right is public, and not private, and is to be exercised for the public good, and not for private emolument.

Counsel refer to the fact that the General Assembly have provided for the condemnation of passways through or under other land between mines. Surely this, instead of proving a private right of passage in a lot owner, if it proves anything, proves directly the reverse. It will be time enough, however,

to consider the effect of the statute when some party shall be before us in a case arising under it.

We are referred to cases in Wisconsin and Minnesota, predicated, as counsel claim, upon statutes which are literal transcripts of our statute in relation to the platting of towns, holding differently from the views we have here expressed, to some extent. It will be found, on examination, that that difference results from a different construction placed upon the statutes of those States by their respective courts than that given our statute in *Trustees* v. *Haven* and *Hunter* v. *Middleton, supra,* and hence the cases referred to need no further consideration.

We are also referred to *Dubuque* v. *Benson,* 2 Iowa, 248, as ruling differently from our ruling here; but that case is predicated on language limiting the effect of the dedication, and the court hold the effect was to reserve to the dedicator all other rights than those of an easement of passage in the streets, and to use and work them as public ways, and this reservation included that of mining and taking minerals therefrom. In *City of Des Moines* v. *Hall,* 24 Iowa, 234, an action was brought by the city to recover damages for coal mined and taken by the defendant from beneath the surface of certain streets of the city of Des Moines. The streets had been laid off and platted in conformity with the statute of that State, and the city claimed that under the statute it had the fee simple title to the streets, and having such a title, it might rightfully maintain the action against the dedicator, or any other person who, without its authority, mined and took coal therefrom. The defendant denied that there was any statutory dedication, but contended that if there was, in law such a dedication does not give the city the right to the coal in the streets beneath the surface. The court held that there was a statutory dedication, and that the city owned the coal and minerals in the street beneath the surface, and consequently was entitled to recover.

The language of the Iowa statute, it is true, is somewhat stronger than that of our statute, but it does not materially differ from what our statute is held to mean in *Trustees* v. *Haven,* and other cases cited *supra.* Judge DILLON, in the case referred to, in delivering the opinion filed, on overruling a petition for rehearing, among other things said: "The true view is, that when land has been dedicated under the statute, without reservation, and the plat has been recorded, and accepted, in cases where an acceptance is necessary, the dedicator or his grantee has no special proprietary rights in the soil composing the streets, but the dominion of the streets passes to the public authorities. No other view gives effect to the strong language of the statute, that 'the acknowledgment and recording of such a plat is equivalent to a deed *in fee simple* of the portion of the land set apart for public use.' It is plain, from this language, that such a dedicator parts with all of his special property rights in the streets, just as effectually as does an ordinary grantor, with, perhaps, the exception of a right of reverter to him or his assignee, in case the street should be vacated. In support of this view see the following cases: *Trustees* v. *Haven,* 11 Ill. 554; *Hunter* v. *Middleton,* 13 id. 50; *Moses et al.* v. *Pittsburgh, Ft. Wayne and Chicago Railroad Co.* 21 id. 516; *Seventeenth street,* 1 Wend. 262; *Clinton* v. *Railroad Co.* 24 Iowa, 455. After such a dedication he has no more right to interfere with the street than a stranger. If the city could maintain this action against a stranger, it can equally maintain it against the dedicator or his grantee."

It is thus seen that this decision is, in part, based on our earlier decisions cited *supra,* which, it is apparent, the learned judge deemed entirely analogous.

The city disclaims the right to mine coal herself, and no one insists that she has authority to confer that right upon others.

A motion was made in the Appellate Court to dismiss the appeal out of that court, upon the ground that a freehold was

involved, and therefore the case should be brought directly to this court. The motion was overruled, and that ruling is assigned for error. We think the motion was properly overruled. This was a bill to enjoin anticipated or threatened suits for trespasses. A freehold, though incidentally, was not directly, involved. It is only where the freehold must have been directly the subject of litigation,—not merely incidentally or collaterally,—that the appeal must be brought directly to this court. *Rose et al.* v. *Choteau,* 11 Ill. 167; *Chicago, Burlington and Quincy Railroad Co.* v. *Watson et al.* 105 id. 217.

.The judgment of the Appellate Court is affirmed, and the cause is remanded to the circuit court to carry out its mandate.

*Judgment affirmed.*