SNODDY, *Appellant*, v. BOLEN *et al.**

In Banc, June 4, 1894.

1. **Deed:** PUBLIC STREET. A conveyance of land bounded by a public street carries the title to the center of the street, unless the contrary is clearly expressed. •

2. ——: ——: PLAT. So, where a city plat represents the lots as being bounded by a street, a deed referring to the plat and describing the lots conveyed by their numbers will pass to the grantee, as against the grantor, and his assigns, the fee to the center of the street.

3. ——: RESERVATION: EXCEPTION. Distinction between a reservation and an exception in a deed considered and stated.

4. **Deed:** PLAT: PUBLIC STREET: RESERVATION OF MINERALS. Where the owner of platted land dedicated the streets to the public, reserving the minerals therein, with the right to mine the same, and subsequently conveyed the abutting lots merely by number without a reservation of the minerals, the latter will pass to the grantee of the lots.

*Appeal from Vernon Circuit Court.*—HON. D. P. STRATTON, Judge. •

AFFIRMED.

*Harrison & Harrison* with *William Thompson* for appellant.

(1) It is competent for the owner to convey his mines by a separate and distinct grant so as to create one freehold in the soil and another in the mines. *Wardell v. Watson*, 93 Mo. 107; 3 Washburn on Real Prop. [5 Ed.], p. 416, sec. 31; side p. 625. No one but the owner of the land in fee can dedicate it, or the use

*The case of Snoddy v. Clark was affirmed upon the authority of this case on June 4, 1894.—[REPORTER.]

of it, to the public, and it is, moreover, essential to a dedication that the owner should intend what he does as a dedication. 3 Washburn on Real Prop. [5 Ed.], p. 79, sec. 7; side page 459. (2) Land is divisible, both horizontally and vertically. Therefore one person may be entitled to the surface of the land and another to the minerals under it. 2 Rapalje & Lawrence's Law Dictionary, p. 723. (3) The common source of title is admitted to be in A. W. Hough and wife; therefore it is not necessary to go back of this time on the question of title. *Hough v. Morton*, 94 Mo. 405; *Charles v. Patch*, 87 Mo. 450. (4) Although the effect of a statutory dedication may be to grant the fee of the streets to the corporation in trust for the public uses, yet, unless prohibited by the statute, the proprietor, in laying out a town or addition, may grant the easement simply and and reserve the minerals, or grant the soil and except the minerals. 2 Dillon on Municipal Corporations [4 Ed.], sec. 629, p. 740; *Dubuque v. Benson*, 23 Iowa 248; *Noyes v. Ward*, 19 Conn. 250; *Manley v. Gibson*, 13 Ill. 312; *Peck v. Engine Co.*, 8 R. I 353; *Co. v. Bachman*, 66 N. Y. 261; 5 Am. and Eng. Encyclopedia of Law 397, and cases cited; *Rutherford v. Taylor*, 38 Mo. 315; *Price v. Thompson*, 48 Mo. 361. (5) The exception in the deed of dedication withdrew from the operation of the conveyance to the mineral estate, which, but for the exception would have passed to the county under the general description, and, whether by grant or exception, it created a separate and distinct estate of inheritance, subject to the servitude of the public. *Wardell v. Watson*, 93 Mo. 107; *Williams v. Hay*, 120 Pa. St. 485. (6) The plat and deed of dedication filed in the recorder's office and referred to in all subsequent deeds and mortgages was notice to all, and as much a part of the deeds and mortgages as though set out in said deed or mortgages. *Whitehead v.*

*Ragan*, 106 Mo. 231; *Dolde v. Vodicka*, 49 Mo. 98; *Dingman v. McCullum*, 47 Mo. 372. (7) The deed of dedication created a separate estate in the mineral, which was vested in Furnas. The deed of trust to O'Keefe did not carry the minerals excepted in the street, but by mesne conveyances became the property of the plaintiff. *Kincaid v. McGowan*, 88 Ky. 91; *Adams v. Iron Co.*, 7 Cush. 361. Brainbridge on the law of Mines and Minerals [Am. Ed.], side page 129. (8) Since the respondents admit that a dedicator may grant the surface estate and except the mineral beneath the surface, as in this case, "the *only* question in the case is solved, when it is satisfactorily determined what the deed of trust did actually convey," as pointedly remarked by the learned judge delivering the opinion in this case. There can be no question, either, that a man entitled to land may grant the surface and except the minerals underneath, and the right to get the minerals, and other rights in and over the property, or enjoyment of it, "and so, the grantee of mines may re-grant, and in all these cases the grantee may maintain action in respect of the rights granted." Washburn on Real Property [5 Ed.], p. 361; *Wardell v. Watson*, 93 Mo. 107; *Caldwell v. Fullerton*, 31 Pa. St. 475; *Marven v. Mining Co.*, 55 N. Y. 536; Dillon on Mun. Corp. [4 Ed.], p. 740. sec. 629.

*Thomas & Hackney* for respondents.

(1) Under the provisions of section 8, chapter 44, General Statutes, 1865 (now sec. 7313, R. S. 1889), the city, by a statutory dedication, does not acquire the absolute ownership in fee in the soil and valuable minerals beneath the surface. The extent of the estate in the corporation is the use of the land as a public street.

All else pertaining thereto, to the center of the earth, belongs to the adjacent owners. *Kimball v. Kenosha,* 4 Wis. 321; *Goodall v. Milwaukee,* 5 Wis. 32; *Milwaukee v. Railroad,* 7 Wis. 99; *Schurmeier v. Railroad,* 10 Minn. 82; *Winona v. Huff,* 11 Minn. 136; *Mankato v. Willard,* 13 Minn. 18; *Lahr v. Railroad,* 104 N. Y. 268–291; *Story v. Railroad,* 90 N. Y. 122; *Cox v. Railroad,* 48 Ind. 178. (2) The purposes of the trust require no larger estate than an easement, and, hence, the fee will not be held to have passed as to any part of the streets and alleys. 1 Perry on Trusts [4 Ed.], sec. 312, pp. 415, 416; 2 Washburn on Real Prop. [3 Ed.], top p. 460; margin p. 187. (3) Where a deed in fee of land was made, "the grantor saving and reserving for his own use the coal contained in said piece or parcel of land, together with free ingress and egress by wagon road to haul the coal therefrom as wanted," it was held that the saving clause operated as an exception and not as a reservation, and that the entire, perpetual property in the coal remained in the grantor in the same right as before the grant. *Whitaker v. Brown,* 46 Pa. St. 197; *Ashcroft v. Railroad,* 126 Mass. 196; *Stockbridge v. Iron Co.,* 107 Mass. 290; *Rich v. Zeilsdorff,* 22 Wis. 544; *Canal Co. v. Hewitt,* 66 Wis. 461; *Fisher v. Laack,* 76 Wis. 313. (4) The deed from Furnas to O'Keefe, trustee, conveying the lots by their numbers, without any exception or reservation, passed from Furnas all his title to the minerals in the streets and alleys abutting on the lots. Angell on Highways [3 Ed.], p. 418, and cases cited; *Kneeland v. Van Valkenburg,* 46 Wis. 434; 2 Dillon on Municipal Corporations [4 Ed.], p. 747, note; Cases cited in note to *Dogan v. Seekright,* 4 Lead. Cas. in Am. Law of Real Prop., by Sharswood & Budd, p. 378; *Baker v. St. Louis,* 75 Mo. 671; *Ferrenbach v. Turner,* 86 Mo. 419; *Hannibal Bridge Co. v. Schau-*

*bacher*, 57 Mo. 582; *Schneider v. Jacob*, 86 Ky. 101; s. c.,
5 S. W. Rep. 350, and cases cited; *Railway v. Witherow*,
82 Ala. 190; *Sherman v. McKeon*, 38 N. Y. 266; *Hague
v. West Hoboken*, 23 N. J. Eq. 357; *Salter v. Jonas*, 39
N. J. Law, 469; *Matter of Robbins*, 34 Minn. 99; *Cox
v. Freedley*, 33 Pa. St. 124.    (5) Under a statute as to
dedication identical with the Missouri statute, and on
facts identical with the facts in the case at bar, it was
held that the mineral under the streets and alleys passed
to the purchaser of the abutting lots.    *Tousley v. Co.*,
24 Kan. 328.

BLACK, C. J.—This is an action of ejectment to
recover "all the lead and zinc mines" in that part of
Allen street which lies east of lot 16 in Hough & Fur-
nas' addition to Webb City.   Lot 16 fronts fifty feet
on the west line of the street, and the street is sixty-two
feet wide, so that the surface of the ground in question
is fifty by sixty-two feet.   The essential facts are these:
A. W. Hough and Isaac Furnas, being the owners of
sixteen acres of land, laid the same off into lots, streets
and alleys.   At the same time they executed the fol-
lowing deed:   We, A. W. Hough and Isaac Furnas,
"owners of the land described in the annexed plat of
Hough & Furnas' addition to Webb City, do hereby
release and convey to Jasper county, in the state of
Missouri for public purposes all the streets and alleys
as designated on said plat, except the right to all valu-
able minerals in said land, which we hereby reserve,
together with the right to mine the same."

This deed bears date the twenty-third of May,
1877; it and the plat were recorded on the sixteenth of
June, 1877.   On the last mentioned date Hough con-
veyed his half interest in lots 1 to 36, both inclusive, to
Furnas "together with all valuable minerals in the
streets and alleys of said additions, east of the middle

of Webb street, as reserved on the recorded plat thereof." Webb street is the first north and south street west of Allen street; and lots 1 to 36 include all the lots east of Webb street. Allen street runs north and south and is wholly on the sixteen acres. The east line of that street is the east line of the addition. Hough and Furnas owned no land adjoining the street on the east.

On the sixteenth of June, 1877, Furnas conveyed the thirty-six lots, describing them by their numbers and making no mention of the minerals in the streets or alleys, to O'Keefe, as trustee, to secure a debt of $612. He made default in the payment of the debt, and the lots were sold under the terms of the deed of trust, and Pinney became the purchaser, and received a trustee's deed dated the eighth of August, 1887. The defendants hold under Pinney by various mense conveyances.

The plaintiff put in evidence two deeds, executed in June, 1889, one from Furnas to Bell and the other from Bell to the plaintiff, conveying "the right to all valuable minerals in the streets and alleys in Hough and Furnas' addition to Webb City, east of the center of Webb street, with the right to mine the same."

The defendants entered and removed a large quantity of lead and zinc from beneath the surface of that part of the street in question. They were still in possession when this suit was commenced.

It will be seen from the foregoing statement that Furnas became the sole proprietor of all the lots east of Webb street and of all the minerals in the streets and alleys east of the center of that street, so that he was the owner of the minerals in Allen street. The question in the case is whether his deed to O'Keefe, conveying the lots by their numbers and reference to the recorded plat, but making no mention of the minerals in the streets, conveyed the minerals in the streets

and alleys. If it did, then the judgment, which was for the defendants, must be affirmed; but if it did not, then the judgment should be reversed and the cause remanded.

The rule of law is well settled in this country and in England that a conveyance of land bounded upon a public street carries the fee to the center of the street, unless the contrary intent is clearly expressed. The authorities asserting this rule are so numerous that it is deemed sufficient to cite the text-books where the cases are collected. 3 Kent's Commentaries [13 Ed.], 433; 4 Lead. Cas. in the American Law of Real Property, 378; 2 Devlin on Deeds, sec. 1024; Elliott on Roads and Streets, 549; 3 Wash. on Real Property [5 Ed.], 451; Angell on Highways [3 Ed.], sec. 314; 2 Smith's Lead. Cases [8 Am. Ed.], 173. And where a plat represents the lots to be bounded by a street, a deed referring to the plat and describing the lots conveyed by their numbers will pass to the grantee as against the grantor and his assigns the fee to the center of the street. *Jarstadt v. Morgan*, 48 Wis. 245; *Gould v. Railroad*, 142 Mass. 85; *Clark v. Parker*, 106 Mass. 554; *Banks v. Ogden*, 2 Wall. 57; *Weisbrod v. Railroad*, 18 Wis. 35; *Cox v. Railroad*, 48 Ind. 178. It is held in two or three states that the center line rule does not apply where the plat is made out and recorded in conformity with the statutes of such states, upon that subject; but this is because the courts of those states hold that the statutes vest the entire title, beneficial and otherwise, in the corporation, so that the dedicator has no interest left in him which is the subject of grant. As to the cases asserting this rule, more will be said hereafter.

In some cases the rule that the center of the street is to be taken as the boundary will be extended so as to include the whole street, as where one lays out a street entirely on his own land and on one side thereof so that

the boundary of the land and the boundary of the street coincide. *Healey v. Babbitt*, 14 R. I. 533; *In re Robbins*, 34 Minn. 99; *Taylor v. Armstrong*, 24 Ark. 102. Such is the case now in hand.

But it is earnestly insisted that the general rule before stated has no proper or just application to this case, because Hough and Furnas had, by the deed of dedication, separated the minerals in the streets so as to make them a separate estate in fee. It may be well enough here to determine the exact character of the estate retained by Hough and Furnas. An exception in a deed is always a part of a thing in being and a part of the thing granted; while a reservation is of a thing not in being and is newly created, as rents and the like. Coke on Litt., secs. 476, 147. An exception withdraws from the operation of the conveyance some part of the thing granted, which, but for the exception, would have passed to the grantee under the general description; while a reservation is the creation, in behalf of the grantor, of some new right issuing out of the thing granted; that is to say, something which did not exist as an independent right. 5 Am. and Eng. Encyclopedia of Law, 455, and cases cited. The terms are often used without noting the distinction, and this no doubt for the reason that that which is called a reservation in a deed will be construed to mean an exception, where it is necessary to do so to carry out the object which the parties to the deed had in view. *Winthrop v. Fairbanks*, 41 Me. 307. The language used in the deed must be considered with reference to the subject-matter and the circumstances of the particular case. *Barnes v. Burt*, 38 Conn. 541; *Stockwell v. Couillard*, 129 Mass. 232; *Whitaker v. Brown*, 46 Pa. St. 197. There can be no doubt but the qualifying words used in the deed from Hough and Furnas to the county amount to an exception, the thing excepted from the

grant being the "valuable minerals" in the streets and alleys. The minerals thus excepted remained in the grantors in the same right as before the grant, and passed to Furnas by the deed to him from Hough. Coal, mineral and stone under the surface of the earth are subjects of grant and exception; and when excepted in a deed become a separate and distinct inheritance. They may be conveyed separate from the surface. *Wardell v. Watson*, 93 Mo. 108; *Caldwell v. Fulton*, 31 Pa. St. 475; *Lillibridge v. Coal Co.*, 143 Pa. St. 293; *Coal Co. v. Mellon*, 152 Pa. St. 286.

Furnas, therefore, had an estate in fee in the mineral in place beneath the surface of the streets reserved by the exception in the deed dedicating the streets to public use. Does this circumstance take the grant made by him to O'Keefe out of the general rule before mentioned, that a conveyance of land bounded on a street carries the entire fee to the center of the street? In answering this question it is deemed proper to see upon what ground the rule is founded, the reason upon which it is based. Says KENT: "The established inference of the law is, that a conveyance of land bounded on a public highway, carries with it the fee to the center of the road, as part and parcel of the grant. The idea of an intention in the grantor to withhold this interest in a road to the middle of it, after parting with all his right and title to the adjoining land, is never to be presumed. It would be contrary to universal practice. * * * It would require an express declaration, or something equivalent thereto, to sustain such an inference; and it may be considered as the general rule that a grant of land bounded upon a highway or river carries the fee in the highway or river to the center of it, provided the grantor, at the time, owned to the center, and there be

no words of specific description to show a contrary intent." 3 Kent's Commentaries [13 Ed.], star p. 433. He uses almost the exact language used in the very early and now leading case of *Peck v. Smith*, 1 Conn. 103.

REDFIELD, J., when speaking of the views expressed by KENT, says: "But, if anything whatever is attempted to be made out of the rule, beyond a mere show, the reasoning of the chancellor is the only ground upon which it can stand, that is, to treat it as a rule of policy merely (and not one of intent chiefly) to be applied in all cases where there is not a clearly defined intention to the contrary."

In *Baker v. St. Louis*, 7 Mo. App. 429, approved by this court in 75 Mo. 671, two persons owning in common a block of ground upon a street conveyed a strip next to the street to the city for the purpose of widening the street so as to give space for a market house, with a clause of reverter, in the event the property should not be used for such purpose.  Before breach of the condition subsequent, these two persons executed deeds of partition, describing the parcel conveyed to each as bounded on the street.  In a controversy commenced after the breach of the condition, it was held that the partition deeds carried the fee to the center of the street, subject to the public easement, as there was no express reservation to the contrary.

Enough has been said to show that the rule stands on the ground of policy and a presumption raised by the law to carry out the policy.  The presumption is that the grantor did not intend to withhold any interest in the street or highway.  The presumption may be overcome, but it must be overcome by something stated in the deed, which shows clearly and distinctly an intention to withhold an interest in the street.  The rule is of the utmost importance, and is necessary to prevent afterthought, strifes and litigation like the one

now on hand, over detached strips and gores of land, generally of no value to anyone save the lot owner. In the vast majority of cases the rule works out the real intention of the parties at the date of the deed.

The rule being based upon these grounds, we can not see how its application can be made to depend upon the extent of the interest which the grantor may have in the street, there being some interest in him. In a common law dedication, whether by parol or in writing, and where property has been condemned for street purposes alone, the fee from the surface to the center of the earth remains in the owner. In all such cases a conveyance of a lot bounded by a street will pass the fee to the center of the street. Here Hough and Furnas conveyed the streets to the county for public use, that is to say for street purposes, and then excepted the minerals. If the center of the street rule applies where the grantor owns the fee from the surface to the center of the earth, how can it be said it does not apply because he simply owns the fee to the minerals, or to a stratum of rock or coal? The reason for applying the rule is as strong in the one case as it is in the other. As the deed of trust from Furnas to O'Keefe contains no exception or reservation, the minerals in the streets and alleys passed by that deed as a part and parcel of the land granted.

This conclusion, it is believed, finds support in *Railroad v. Witherow*, 82 Ala. 193. It is there said: "In the absence of a statute to the contrary, a conveyance of land bounded by a public highway, or of lots in a city bounded by a public street, carries with it the fee to the center of such road or street, as a part and parcel of the grant; and the grantee has the exclusive right to the soil, subject to the right of way implied from the original dedication, *whatever that right may be held to embrace, which varies with the decisions of the*

*different courts;"* thus showing in the opinion of that court that the application of the rule does not depend on the extent of the right vested in the public.

In *Tousley v. Mining, etc., Company*, 24 Kan. 328, the mining company filed a plat and thereby laid off a tract of land into lots, dedicating the streets and alleys to public use, but setting forth in such dedication that it reserved to itself all the mineral under the surface of the streets and alleys. The company then sold two lots to Tousley and Neal without any reservation or condition. The latter mined from these lots under the half of the street next to them, and the mining company brought an action for damages. The court waived the question whether the reservation was void under the statute of that state concerning town plats, but said: "Conceding that the reservation was valid, that the fee did not pass to the public, then it seems to us that the warranty deed of the lots conveyed all the grantor's interest in the street up to the center. That such was the rule at common law, will not be questioned." There is in point of principle no difference between that case and the one now in hand. Indeed, it is directly in point and the conclusion there expressed is in entire accord with what we have before said in this case.

Counsel for plaintiff place much reliance upon *Zinc Co. v. LaSalle*, 117 Ill. 411. That case and the prior one of *Canal Trustees v. Haven*, 11 Ill. 554, and the subsequent case of *Union Coal Co. v. LaSalle*, 136 Ill. 119, hold that where a plat has been executed and filed pursuant to the statute of that state, the lot owners have no right to remove coal from beneath the surface of the streets, and that a conveyance of a lot bounded by a street carries no interest whatever in the street. A like construction is given to a statute in Iowa relating to town plats. *City of Des Moines v. Hall*, 24 Iowa, 236. See, also, 6 Bush (Ky.), 332. These cases are all based upon the

construction given by those courts to statutes of their respective states, and that construction is this, that, upon executing and filing a plat pursuant to the statute, the entire fee in the street passes to the corporation. The dedicator and his grantees, it is held, have no interest in the streets, legal or otherwise, except that in common with the public, namely the right of passage over them. We are at a loss to see how these cases aid or assist the plaintiff. If the principle at the bottom of them be applied to this case it must follow that Furnas had nothing which he could convey, either to O'Keefe or to the plaintiff's grantor, and the plaintiff acquired nothing by the deed to her. But these cases have no application to this one, for it is conceded on all hands that Furnas had an interest which he could convey. It may be observed that an entirely different construction has been given to the statutes of Wisconsin and Minnesota concerning town plats, which statutes are said to be the same as that of Illinois. *Kimball v. Kenosha*, 4 Wis. 321; *Milwaukee v. Railroad*, 7 Wis. 98; *Schurmeier v. Railroad*, 10 Minn. 82.

Our statute in force when Hough and Furnas executed the deed to the county provides that such maps and plats, made, acknowledged, certified and recorded as provided, "shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses in such city, town, or village, when incorporated, in trust and for the uses therein named, express or intended, *and for no other use or purpose.* If such city, town or village shall not be incorporated, then the fee of such lands conveyed as aforesaid, shall be vested in the proper county in like trust, and for the uses and purposes aforesaid, *and no other.*" G. S. 1865, sec. 8, p. 248. Whilst this statute vests the fee in the streets in the city, town, village or county, still it is held in trust for street purposes and

for no other use or purpose. Every other beneficial use is in the lot owners, and this interest of the lot owner will pass by a conveyance of the lot. No other deduction can be made from the cases heretofore decided by this court. *Hannibal Bridge Co. v. Schaubacher*, 57 Mo. 584; *Price v. Thompson*, 48 Mo. 361; *Ferrenbach v. Turner*, 86 Mo. 416, and cases cited. But it is unnecessary to pursue the inquiry, because the dedication in question was not a statutory one, and because it is conceded on both sides of this contest that Furnas owned the minerals in the streets and alleys; and we have before seen that his title to the minerals in the streets and alleys passed as part and parcel of the grant to O'Keefe.

Counsel for plaintiff place much reliance upon *Kincaid v. McGowan*, 88 Ky. 91. We have before said that mineral in place may be made the subject of an exception or of a separate grant, and therefore agree to all that is said in that case. No question as to the effect to be given to a deed conveying lots bounded by a street or a highway was considered or involved in that case. It is, therefore, not in point on the real issue here.

An effort is made in the briefs filed in behalf of the plaintiff on the reargument of this cause in this court, to show that Hough and Furnas, in platting the sixteen acres retained a strip of land along the east side of Allen street. If they did retain such a strip, then it is very clear that the deed of trust from Furnas to O'Keefe passed the title in that street only to the center thereof, so that the plaintiff would be the owner of the minerals in the east half of it. But no such question was made or even intimated in the trial court, and hence there is no such question before us on this appeal. The monuments placed on the ground when locating the streets and lots must control, and there is nothing in the record to show that the east line of Allen street was not located on the east line of the sixteen acres. As the

record stands, there can be no other conclusion than this, that the east line of the sixteen acres and the east line of Allen street are one and the same line.

It follows from what has been said that the judgment should be, and is, affirmed. GANTT, SHERWOOD and BURGESS, JJ., concur. BRACE and MACFARLANE, JJ., dissent. BARCLAY, J., not sitting.

BRACE, J. (*dissenting*).—This is an action in ejectment to recover possession of "all the lead and zinc mineral and mines" in and under the ground of a certain described portion of Allen street in Hough and Furnas' addition to Webb City, Missouri. The answer is a general denial. The case was tried by the court without a jury; the defendants admitted possession; the finding and judgment were for the defendants, and the plaintiff appeals.

It was admitted that A. W. Hough and wife and Isaac Furnas are the common source of title. Hough and wife, by warranty deed of date April 18, 1877, conveyed an undivided half of the tract upon which said addition is located, to Isaac Furnas. By deed and plat dated May 23, 1877, duly acknowledged and recorded June 16, 1877, Hough and wife and Furnas laid out and dedicated their addition to Webb City. The deed is as follows:

"Know all men by these presents: That we, Augustus W. Hough and Martha W. Hough, his wife, and Isaac Furnas, owners of the land described in the annexed plat of Hough and Furnas' addition to Webb City, do hereby release and convey to Jasper county in the state of Missouri for public purposes all the streets and alleys as designated on said plat, except the right to all valuable minerals in said land, which we hereby reserve together with the right to mine the same.

"In witness whereof we have hereunto set our hands and seals this twenty-third day of May, A. D. 1877.

"A. W. HOUGH,              [SEAL].
"MARTHA W. HOUGH,          [SEAL].
"ISAAC FURNAS,             [SEAL]."

Afterwards, the said Hough and wife, by warranty deed, dated June 16, 1877, acknowledged and recorded on the same day, conveyed to the said Isaac Furnas the undivided half of lots numbered 1 to 36 inclusive, "together with all valuable minerals in the streets and alleys of said addition to Webb city, east of the middle of Webb street as reserved on the recorded plat thereof."

By deed bearing the same date but acknowledged and recorded on the eighteenth of June, 1877, the said Isaac Furnas conveyed the same lots by the same numbers to E. O'Keefe, party of the second part, "to have and to hold the same with the appurtenances to the party of the second part, and to his successor or successors in this trust, and to him and his grantees and assigns forever." "In trust however" to secure the payment of a certain promissory note therein set out to "D. S. Thomas, cashier of the First National Bank of Carthage" party of the third part.

Allen street is east of Webb street, and, of the lots conveyed, those numbered from 1 to 18 inclusive front on the west side of Allen street, the east line of which forms the eastern boundary of the addition, and are all the lots in the addition fronting on that street; those numbered from 19 to 36 inclusive front on the east side of Webb street. There was a sale under this deed of trust, and a deed executed to the purchaser, and the defendants claim title under this deed of trust.

On third of June, 1889, the said Isaac Furnas et ux, by warranty deed of that date, duly executed and

acknowledged, and recorded on the fifth day of June, 1889, conveyed to Oliver D. Bell "all of the streets and alleys east of the middle of Webb street in Hough and Furnas' addition to Webb City, Missouri, or the right of all valuable minerals therein, together with the right to mine the same as reserved when said streets and alleys were dedicated, more particularly described as follows," etc. Afterwards Bell and wife conveyed the same in like manner to plaintiff, and she claims title under this deed from Furnas, so that Furnas is in fact the common grantor under whom both claim and from whom the plaintiff deraigns a perfect legal title to the premises claimed, unless those premises were included in the deed of trust previously made by him to O'Keefe under which the defendants claim. As the answer was simply a general denial, all we have to deal with here is the legal title, and, as the action is eject-ment, the plaintiff can not recover, unless she holds the legal title. She has the legal title unless it passed to O'Keefe by the deed of trust. If it did so pass, she has not the legal title, and so far as this inquiry is concerned, it makes no difference whether that title is in the defendants or outstanding, she can not recover. The only question in the case is solved when it is satis-factorily determined what the deed of trust did actually convey.

It is important to inquire, first, what Furnas owned in respect of these premises when he executed the deed of trust? He certainly owned in fee simple absolute, all that part of the tract east of the middle of Webb street to the east boundary of the addition which included the whole of Allen street, except so much thereof as was granted to the county for public pur-poses in the deed of dedication, just as he and Hough owned it before the execution of that deed. While in this instance a plat was filed with the deed, and as a

part thereof, it was not purely a statutory dedication (Gen. Stat. 1865, chap. 44), but a dedication by deed, and its extent must be measured by the terms of the instrument.

While the grant to the public was not of a mere easement or right of way over the soil of the streets and alleys as laid down on the plat, neither was it a grant of the whole *corpus* of the material defined by, and contained between, the lines of those thoroughfares, but, within those lines, all was granted *usque ad inferas*, except the *"valuable mineral"* therein contained. That was expressly reserved to the grantor, "with the right to mine the same." There can be no question that the grantees had the right to thus divide their property and to dispose of one part and retain the other. "A man entitled to land may grant leases, may grant exclusive herbage, a right of depasturing, a right of way, or a right to game. He may grant the mines underneath, or the right to get at the minerals, and other rights in and over the property, or enjoyment of it. * * * So the grantees of mines may re-grant; and in all these cases, the grantee may maintion actions in respect of the rights granted." *Nuttall v. Bracewell*, L. R. 2 Ex. 11, quoted in 3 Wash. on Real Prop. [5 Ed.], p. 361. As was said in *Wardell v. Watson*, 93 Mo. 107, *loc. cit.* 111, "Coal and minerals in place are land; may be conveyed as such, and, when thus conveyed, constitute a separate and distinct inheritance. *Caldwell v. Fulton*, 31 Pa. St. 475. * * * A reservation of minerals and of mining rights, it is said, is construed as an actual grant thereof. * * * *Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538."

The dedicators, after the grant, retained the same right and title to all of the "valuable mineral" beneath Allen and the other streets and alleys of the addition, that they held before the grant, and Furnas held by

grant all their title to that mineral at the time the deed of trust was executed. Did it pass to O'Keefe by that deed? The land conveyed by that deed is described by defined boundaries, the metes and bounds being the lines of each lot as they appear on the plat. There are no reservations in the deed; within those boundaries everything was conveyed to the center of the earth; and, more than this, every appurtenance thereto was conveyed; besides this, nothing *was* in terms conveyed. The property in controversy is without those boundaries, and, unless appurtenant thereto, was not conveyed by the *terms* of the deed. Appurtenance is defined to be "a thing used with, and related to or dependent upon, another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant." "The term as used in conveyances passes nothing but the land and such things as belong thereto, and are part of the realty. * * * Therefore, where a conveyance is of a piece of land by defined boundaries 'with appurtenances,' other land not included in the boundaries will not pass as appurtenant to the grant. All that can be claimed, as embraced in the word 'appurtenances,' are easements and servitudes necessary to the enjoyment of the land conveyed." 1 Am. and Eng. Encyclopedia of Law, 641, and notes.

It is obvious from these definitions that Furnas' title to the "valuable mineral" under Allen street could not, and did not, pass as appurtenant to the lots conveyed in the deed of trust. See, also, *Jackson v. Hathaway*, 15 Johnson, 447; *Harris v. Elliott*, 10 Peters, 54; *Buck v. Squiers*, 22 Vt. 484. In fact, counsel for defendants do not so contend. Their contention is based upon two propositions.

*First.* That, "by the filing of the plat of Hough and Furnas' addition to Webb City, the public acquired

only an easement in the streets and alleys, the owners retaining their right in the soil for all purposes not inconsistent with such easement." *Second*. That "the conveyance of a city lot bounded on a street always carries the fee subject to the public easement, unless there be an express reservation to the contrary, and the reservation, to be effectual, must be made in the deed itself."

The first of these propositions totally ignores the deed, and treats the dedication as a purely statutory one; and, even if it could be so treated, this proposition can not be maintained, for the statute provides: That plats of additions such as this was, "when made, acknowledged, certified and filed with the recorder, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein named, described or intended for public uses, in such town, city or village," etc. So that, if this was purely a statutory dedication by plat, the city acquired more than a mere easement or right of way for a highway; it acquired the fee in trust for public uses, but, as before stated, this was not such a dedication; the deed can not be ignored, and the extent of the dedication must be measured by it. "Although the effect of a statutory dedication may be to grant the fee of the streets to the corporation in trust for the public uses, yet, unless prohibited by statute, the proprietor, in laying out a town or addition, *may grant the easement simply*, and reserve the minerals therein." 2 Dillon on Mun. Corp. [4 Ed.], p. 740, sec. 629.

Here the grant in the deed, though not going to the extent of a statutory dedication without reservation, was, as we have seen, the grant of more than an easement; it was a grant of the fee; of an estate of inheritance; of the whole soil of the streets and everything thereunto belonging, except "the valuable mineral

therein contained'' and the right to mine the same. So that, in either case, the first proposition must fall and with it the second, which is predicated upon it, if there were no other faults to be found in it.

But the second is faulty in many respects. The real proposition which the learned counsel undertake to cover by these two propositions and which the authorities cited tend to sustain, is that, where an owner in fee of a tract of land lays off thereon an addition to a city into lots and blocks, divided by streets and alleys, and grants to the public by deed or plat *a simple easement* or right of way therein, and afterwards conveys one of the lots by its number as designated on such plat, the conveyance, in the absence of any reservation contained in the deed, will vest the fee in the grantee to the middle of the street or alley on which it abuts, and he may enter upon the street and ''appropriate the soil thereof to his own use, for all purposes not inconsistent with such easement.''

It is obvious that the case in hand is not within the terms of this proposition when thus properly stated. In order to bring it within these terms, it is necessary that, at the time the deed of trust was executed, the public should have had only a simple easement or right of way and that Furnas should have been the owner in fee of the land over which the public had such right. But, as we have seen, he was not the owner in fee of the land over which the public had such easement or right of way, having theretofore conveyed it by his deed to the county, and instead of the public having a mere easement over it, the fee thereof was held by the county or city in trust for the public use. That the fee thus conveyed was only a conditional fee, liable to be defeated by a discontinuance of the use of the soil for the public purpose for which it was granted, in which event there might be a reverter of the

fee, does not change the fact that, by the deed of dedication and plat, the fee passed, and in such case under a statute of Iowa of similar import to ours, it was held that "neither the original proprietor nor his grantees have the right to the subterraneous deposits of coal within the limits of such streets, and the corporation may maintain an action against him for coal mined and taken by him from beneath the same." *City of Des Moines v. Hall*, 24 Iowa, 235; distinguished from *Dubuque v. Benson*, 23 Iowa, 248, in the opinion in the later case. Of like purport is the case of *Zinc Co. v. LaSalle*, 117 Ill. 411, in which SCHOLFIELD, J., disposes of the possible distinction suggested between the rights of the lot owner in cases where a fee simple absolute is vested in the municipality and those where a base or determinable fee is so vested, in the following language: "The title vested in the town by the statutory dedication is absolutely for the purpose of the statutory trust until the street shall be subsequently vacated, when it will revert to the dedicator, or, it may be, in cases like the present, to the adjacent lot owner. Possibly, at some time in the future, there may be a reverter, but this is no reversion. 4 Kent's Com. [8 Ed.], 372. It is too palpable for argument, that until there is a reverter, the lot owner can have no greater right to enter upon and appropriate the soil and minerals of the street to his personal use, than a stranger, because his right can only commence in the event and at the time that the right of the town has ended."

Of course there is, and never can be a reverter of the subject-matter of this suit, since there can be a reversion only of that which has been granted, and it was never granted. There may be hereafter a reversion of the soil in which a fee was granted to the city, but such reversion can not include the "valuable mineral" which was excepted from the grant. This matter is

alluded to simply because of the assumption, in defendant's contention, that, under the deed, in this case, or even under a purely statutory dedication, nothing more passes to the municipality or the public than a mere easement which seems to have nothing more to rest upon than another assumption that a determinable fee, such as the statute vests, is no more than a mere easement.

The fact is, the lot owners' rights under the rule, whatever they may be, grow wholly out of the thing granted by the dedicator and the relation which he and the dedicator sustain to that thing, and not to anything reserved. And the arbitrary common law rule of construction by which the deed of a grantee of a lot is to be extended beyond the limits of the grant to the middle of the street, is and ought to be, strictly limited so far as the grantor and those claiming under him are concerned, to the subject-matter of the grant, which, in this case, was the soil of the street and not the valuable mineral therein contained; and, whatever principle be relied upon to sustain the propriety of the rule, whether presumed intent of the parties, or grounds of public policy, there is no difficulty in maintaining the propriety of such limitation. Ancient common law rules of construction should be applied in the light of the age in which we live. As was happily remarked by the Chief Justice of Pennsylvania in the recent case of *Coal Co., v. Mellon*, 152 Pa. St. 286, decided January 9, 1893, (in regard to another rule of the common law): "It is the crowning merit of the common law, * * * that it is not composed of ironclad rules, but may be modified to a reasonable extent to meet new questions as they arise. This may be called the expansive property of the common law. Mining rights are [peculiar and exist from necessity, and the necessity must be recognized, and the rights of mine and landowners adjusted

and protected accordingly.  *  *  *  The mining of coal and other minerals is constantly developing new questions.   Formerly, a man who owned the surface owned it to the centre of the earth.   Now, the surface of the land may be separated from the different strata underneath it, and there may be as many different owners as there are strata.   *Lillibridge v. Coal Co.*, 143 Pa. St. 293.  *  *  *  In the earlier days of the common law the attention of buyers and sellers, and, therefore, the attention of the courts, was fixed upon the surface.   He who owned the surface owned all that grew upon it and all that was burried beneath it.   His title extended upward to the clouds and downwards to the earth's centre.   The value of his estate lay, however, in the arable qualities of the surface, and, with rare exceptions, the income derived from it was the result of agriculture."

It was upon the surface that the judicial mind, as well as the minds of the owners of real estate, were fixed in early times when the rule under consideration was adopted and applied to estates, in order that the symmetry of those estates might be maintained, and that strips in use as highways at the time of the grant and long regarded as the actual boundaries between those estates, might not become in case of abandonment the unprofitable heritage of a stranger to those estates, who could subject the owners thereof to insufferable inconvenience by reason of his ownership in case of reverter.

The estate which Isaac Furnas held in all the valuable mineral beneath Allen street at the time he executed the deed of trust to O'Keefe, was exactly the same estate that he and Hough held when they dedicated the streets and alleys of Webb City to the public. By their deed placed upon the public records, they separated that estate from the streets and alleys and

from all the soil beneath them. By the subsequent deed of Hough to Furnas, in which Hough relinquished to Furnas his undivided half interest in the mineral, the separation of that estate from the soil of the street was again asserted and published upon the public records. In the face of these acts of Furnas, it would be folly to say that he actually intended, when conveying a lot abutting on the street, to convey also a property so carefully reserved and separated from such lot, or that the grantee of the lot could have supposed that was his intention by the terms of the grant with this distinct and notable separation staring him in the face upon the public record of the title he was about to purchase.

The fact is, this property, so separated and afterwards conveyed to the plaintiff's grantor, is neither within the letter or spirit of the common law rule by which it is sought to be included within the boundaries of the lots conveyed in the deed of trust; that rule is satified when the grantee gets the lots conveyed to him, with all the rights and privileges in the streets that belong to an abutting proprietor who does not own the soil of the streets and alleys, but who in case of an abandonment may have a reversionary interest in fee in all of the soil that was actually granted to the public, to the middle line of the street on which his lot abuts, but who, merely as lot owner, can never have any reversionary interest in the valuable mineral therein contained which was never granted for the purposes of such streets and alleys, but was expressly reserved therefrom.

The judgment ought to be reversed and the cause remanded. MACFARLANE, J., concurs.