**OKLAHOMA CITY v. STATE ex rel. WILLIAMSON, Atty. Gen.**

No. 28375. April 4, 1939.

Rehearing Denied June 6, 1939.

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, for plaintiff in error.

Mac. Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendant in error.

DAVISON, J. This is an action to quiet title to real estate. It was instituted in the district court of Oklahoma county on the 17th day of December, 1936, by the state of Oklahoma on relation of the Attorney General, as plaintiff, against the city of Oklahoma City, a municipal corporation, as defendant. The plaintiff prevailed in the trial court, and the defendant appeals.

The real estate involved is block 11 in the Amended Second State Capitol addition. There is an existing oil lease on the property for which a cash bonus was paid at the time the lease was executed. Production of oil is being accomplished under the lease and royalty is accruing under the terms of the lease. By agreement of the parties the moneys have been deposited with and are accumulating in the hands of a stakeholder pending the outcome of this litigation.

Oklahoma City is claiming the land by virtue of a dedication or attempted dedication for park purposes made by the state in connection with the platting of the addition. The state claims the title did not pass by reason of want of authority to "give away" the land as well as by reason of the failure of the city to accept the dedicated tract, which acceptance is asserted to have been essential by reason of the terms and conditions of the dedication.

The property was originally a part of a tract of land acquired by the state from the State Capitol Building Company by warranty deed dated July 3, 1914. It was a portion of the 650 acres alluded to in Senate Joint Resolution No. 7, page 264, Session Laws 1913, as the "Capitol Building Lands." The Senate Joint Resolution referred to pertained to the acceptance of the lands on behalf of the state of Oklahoma.

Chapter 220 of the Session Laws of 1913 related to the building of the State Capitol, established a State Capitol Commission, and vested certain designated authority with reference to the 650 acres of land mentioned above in the State Capitol Commission and the Commissioners of the Land Office pursuant to recommendations of the commission. At a meeting held on September 21, 1917, the State Capitol Commission recommended that the land here involved

220

be held until the Legislature directed its sale.

In 1919, by chapter 317, S. L. 1919, the Legislature authorized Oklahoma City to extend its limits to include the land now constituting block 11, supra, and other lands "for all city, governmental, and other purposes." By House Joint Resolution No. 21 (being chapter 318. Oklahoma Session Laws 1919, known as House Joint Resolution No. 21) Oklahoma City was authorized and requested by the Legislature to extend its sanitary sewer system to include the area in which block 11, supra, is situated.

Chapter 298, Session Laws of 1919, authorized the **sale or exchange** of lands of the state known as "Capitol Building Lands," which included the tract of land here involved.

Section 5533, O. S., 1931, which has been a part of our statutory law since 1909, provides:

"The Commissioners of the Land Office shall reserve from sale, any lands lying near or within the limits of any city or town, which may have a greater value than for farming purposes, by being platted and sold as town lots, acreage tracts, or public parks; and said commissioners shall cause said lands to be surveyed, platted, appraised and sold at public auction for such purposes, and the lessee shall have the preference right to buy at the highest and best bid."

It is pointed out by the state that neither of the foregoing legislative enactments relating to or said to relate to the land here involved specifically authorizes the gift thereof to the city or any other person, natural or corporate, and it is argued that such authority cannot be implied or inferred from the authority therein specifically granted. The state therefore insists upon the conclusion that a dedication for park purposes constituted an attempted gift and was in excess of the authority granted administrative officers and void. The state also urges that the dedication of the proposed park was coupled with a burden and that the law therefore required an acceptance of the gift; that no such acceptance ever occurred, and for that reason the title never vested in the city. We are of the opinion that the latter position of the state is well taken, and therefore deem it unnecessary to discuss the former.

In platting the addition, block 11 and other blocks "lying within McMechan Parkway" were "dedicated to the city of Oklahoma City for the use and benefit of the general public, provided always that the city of Oklahoma City shall maintain, care for and manage at it own expense said parks."

Thus the dedication of the block for park purposes carried with it the obligation of care and maintenance by the city at its cost.

The state introduced evidence tending to show that the dedication of block 11 to the city for park purposes was neither expressly nor impliedly accepted. Since the judgment of the trial court in favor of the state was general, and is therefore deemed to include a specific finding favorable to the prevailing party on all material issues of fact (Gillespie v. Dougherty, 179 Okla. 330, 65 P.2d 486), our consideration of this appeal must proceed on the theory that there was no acceptance unless such finding is contrary to the evidence. An examination of the evidence discloses that it amply supports the view that the city did not accept block 11 as its property for park purposes either by official action of its governing body or by improvement for park purposes. We may appropriately observe in this connection that the state definitely exercised its asserted dominion over and reasserted its ownership of the tract when in 1925, the State Legislature by chapter 164 Oklahoma S. L. 1925, set aside block 11 and other adjacent property for the Medical Department of the University of Oklahoma. No question was raised by the city against this disposition of the property until immediately preceding the institution of this litigation in 1936, when the property became potentially valuable by reason of oil and gas exploration and development in the area.

The city rests its case presumably upon the contention that an acceptance was unnecessary. It is generally recognized that acceptance in some form is essential to complete a conveyance by dedication. The rule is stated in 16 Am. Jur. 377, par. 31, in the following language:

"Acceptance in some form or other is essential to a complete dedication, especially as carrying with it the duty to maintain and repair and the liability for neglect thereof. * * *"

The rule as stated in Niles et al. v. City of Los Angeles et al. (Cal.) 58 P. 190, and adopted with approval by this court in City of Tulsa v. Aaronson, 103 Okla. 159, 229 P. 596, is as follows:

"To constitute a dedication of land to the public, two things are necessary, to wit: An intention by the owner clearly indicated by his words or acts to dedicate the land

to public use; and an acceptance by the public of the dedication."

The reason for the rule is tersely stated in 16 Am. Jur. page 379, wherein it is said:

"Ownership and control by the municipality may, and in a number of cases would, entail burdens and expense. It seems obvious that a municipality cannot have undesirable properties thrust upon it and be burdened with the various duties, expenses, and liabilities incident to ownership without some action, direct or implied, on its part showing acceptance, any more than a private individual can have such burdens thrust upon him without acceptance on his part."

It is also frequently pointed out that dedication is but a form of conveyance of property and is in the nature of a contract or grant. Like other contracts or grants, both offer and acceptance are essential for the completion thereof. 16 Am. Jur. 377, par. 30. Additional authorities demonstrating the prevalence of the view that acceptance is necessary to the completion of a conveyance by dedication are: 18 C. J. 73, sec. 67; County of Wayne v. Henry Miller, 31 Mich. 447; McQuillin, Municipal Corporations (2d Ed.) vol. 4, page 553; City of Spokane v. Security Saving Society, 82 Wash. 91, 143 P. 435; Ramstad et al. v. Carr et al., 31 N. D. 504, 154 N. W. 195.

Calm reflection demonstrates not only the reasonableness of the rule but the necessity for the preservation thereof. Many instances exist in which the ownership of property is actually burdensome. Paving or other special improvement taxes against property may equal or even exceed its actual value. Mortgage indebtedness may also constitute an existing burden which follows the property, or the cost of maintenance for park or other public purposes may well exceed the anticipated benefits. It would be unique and exceedingly unjust if such burdens could be forcibly thrust upon unwilling municipalities by the simple formality of dedication. Of course, cases may and do arise where acceptance is presumed by reason of the fact that the property dedicated is wholly beneficial and free from burden, either present or contingent, or where the purpose of dedication and the property dedicated is so essential to the maintenance of the governmental unit that the exigencies of the occasion demand the recognition in law of a presumed acceptance. These phases of the law need not be discussed here, for the reason that we are not here confronted with such a situation. Neither do we deem it necessary to discuss cases cited by the parties which are distinguishable on these considerations.

The city urges that a different rule with relation to acceptance of dedicated property should prevail in this jurisdiction by reason of section 6141, O. S. 1931. The section cited relates to the sufficiency of the method employed, namely dedication, to divest the grantor of his title. It does not compel the acceptance of burdensome property, except possibly in cases where, as suggested above, the public use of the property is indispensable, in which case a presumption of acceptance may arise. But it is doubtful if such presumption of acceptance can be accurately said to have arisen from the statute, although there may be some language in the previous decisions of this court which imply a connection between the two, that is, the statute and acceptance essential to completion of conveyance by dedication.

The city places a great deal of reliance upon those decisions by the court holding in substance that where a person has dedicated property to a public use (as, for instance, a park) and where, in reliance upon such dedication, persons have purchased lots in an addition of which the park is a part, the dedicator cannot reclaim the property. It is asserted that a consideration of those cases should entitle the city to prevail in the case at bar. The cases alluded to hold that the public has acquired an interest in the property which the dedicator cannot reclaim. See Fortson Inv. Co. v. Oklahoma City, 179 Okla. 473, 66 P.2d 96.

The situations are not analogous. It may be true (assuming without deciding that the administrative officials of the state were authorized by legislative act to include parks in the plat) that the state cannot by reason of the platting of the Second State Capitol addition, and the sale of lots therein, withdraw the property from the use of the public as a park, yet by reason of the governmental character of the grantor, as dedicator, there is nothing inconsistent with its continued ownership of the property and the use thereof by the public for park purposes. The state can maintain a park as well as its subordinate subdivisions, and in this vital respect the case at bar is distinguishable from Fortson Inv. Co. v. Oklahoma City, supra, and other cases cited by the city.

We think that it is pardonable to observe at this point that neither of the parties to this litigation, city or state, has shown any great interest in maintaining a

park on the property here involved during the 20 years since it was platted, regardless of the detriment resulting to property owners of the addition from their refusal or neglect. We are also prone to suspect that their present agitation over the ownership of the property arises from a selfish desire to possess it for it pecuniary value rather than a philanthropic desire to carry out the benevolent purposes of the dedication.

Thus in deciding this case, we do not hold that the property is not still available as a park and susceptible of being donated to a public use. We merely hold, as did the trial court, that the city of Oklahoma City, a municipal subdivision of the state, refused and failed to accept title thereto.

The city also urges that block 11 should be considered as a parkway and part of the street rather than a park, and in support of this view calls our attention to Yeaman et al. v. Oklahoma City, 181 Okla. 43, 72 P.2d 357. The property involved in the cited case was dedicated for street purposes and in devoting it to that use, parkways, as distinguished from parks, were left in the center of the street. The situation is entirely different from the case at bar. Block 11 herein was never dedicated for street purposes; on the contrary, it was specifically dedicated as a park.

Our views upon the issues herein discussed dispense with the necessity of discussing other issues raised in the briefs. The decision of the trial court is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and CORN and GIBSON, JJ., concur.