### LANGSTON CITY et al. v. GUSTIN et al.

No. 30057. June 23, 1942.

*127 P. 2d 197.*

Bruce & Rowan, of Oklahoma City, for plaintiffs in error.

Harry F. Brown, of Guthrie, for defendants in error.

DAVISON, J. The question in this case is whether a municipality of this state acquires a fee-simple title to property acquired for a cemetery by a statutory dedication when the property was marked on the plat as *"Donated."*

In this action, Langston City, a municipal corporation, is seeking to quiet title to a tract of land so acquired against the claims of Henry K. Gustin, Harry F. Brown, and numerous others who, as heirs of and successors in interest to the dedicator, are asserting that the municipality has only an easement for cemetery purposes, and acting upon that theory have executed conveyances which in practical operation are or were intended to affect the oil and gas rights connected with the ownership of the fee in the property.

The case was instituted by the municipality in the district court of Logan county on April 19, 1937. Before the case was tried a controversy arose between the defendants as to who owned the fee in the property if the city had only an easement. Harry F. Brown not only denied the claim of the city to a fee-simple title but also by way of cross-petition against his co-defendants asserted that such title was vested in himself.

When the case was tried and finally decided in April of 1940, Brown's position prevailed over that of the municipality and he was equally successful in connection with his cross-demand. The municipality has appealed. The defendants adversely affected by the portion of the decision determining Brown's superior rights as against them have not. They appear herein only as defendants in error, being parties to this appeal because named as defendants in error by the municipality.

Our review and consideration of the case, therefore, does not comprehend the rights of the defendants between themselves or the validity of the judgment which Brown obtained against other defendants.

The order of appearance of the parties is thus preserved in this court. We shall continue to use the trial court designation when referring to them.

The question for determination, then, is: What was the extent and quality of the interest or title which the municipality acquired in the tract "donated"

to it by dedication for cemetery purposes?

The dedication in this case occurred in 1891. The dedication was in conjunction with and a part of a plat by which other property was platted into lots and blocks for townsite property. The cemetery was not, however, immediately adjacent to the other property platted.

The platting and dedication was made pursuant to and in accord with the requirements of 11 O. S. 1941 §§ 511 et seq., which sections were then Statutes of 1890, §§ 732 et seq.

On the plats, certificate, and acknowledgments made in connection therewith, the streets were indicated as "dedicated," but the cemetery was marked "Donated to Langston City For Cemetery."

There is, in this case, no question of acceptance of the dedicated property and the parties agree that we are dealing with a statutory as distinguished from a common-law dedication.

The basic distinction is worthy of note, for the authorities are agreed that in a common-law dedication an easement only in lands designated for public use is conveyed by the dedication, whereas in a statutory dedication a greater estate, frequently a fee simple, may be conveyed. Of course, the extent of the estate conveyed by dedication under a statute depends upon the governing statute. 26 C. J. S. 134; 16 Am. Jur. 402; 8 R. C. L. 906-907.

The section of our statute which determines the extent and quality of the title or interest conveyed is 11 O. S. 1941 § 515. For purposes of reference in our further discussion we have divided that statute at the first and only semicolon appearing therein. The statute as thus divided reads:

"When the plat or map shall have been made out and certified, acknowledged and recorded as required by this Article, every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on said plat or map, shall be deemed in law and equity a sufficient conveyance to vest the fee-simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs or representatives, to said donee or donees, grantee or grantees, for his, her or their use for the uses and purposes therein named, expressed and intended, and no other use and purpose whatever; and the land intended to be used for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto shall be held in the corporate name thereof in trust to and for the use and purposes set forth and expressed or intended. R. L. 1910, sec. 511."

The plaintiff municipality contends that its claim to a fee-simple title under the foregoing statute is supported by the following prior decisions of this court: City of Tulsa v. Aaronson, 103 Okla. 159, 229 P. 596; Minton v. Smith, 102 Okla. 79, 227 P. 75; Siegenthaler v. Newton et al., 174 Okla. 216, 50 P. 2d 192; Fortson Inv. Co. v. Oklahoma City, 179 Okla. 473, 66 P. 2d 96; Thomas v. Farrier, 179 Okla. 263, 65 P. 2d 526; Kee v. Satterfield, 46 Okla. 660, 149 P. 243; Oklahoma City v. State ex rel. Williamson, Atty. Gen., 185 Okla. 219, 90 P. 2d 1064; Herold et al. v. Dowell, 171 Okla. 184, 42 P. 2d 252; Chas. E. Knox Oil Co. v. McKee et al., 101 Okla. 56, 223 P. 880.

Our attention has also been directed to Oklahoma Ry. Co. v. Severns Paving Co., 67 Okla. 206, 170 P. 216.

The defendants deny that the foregoing cases determine the issue, and rely upon cases from other jurisdictions which they assert are of persuasive importance.

Our examination and analysis of the former decisions of this court discloses that with the exception of Oklahoma Ry. Co. v. Severns Paving Co., supra, they have no direct bearing on the question of the quality or extent of the right or title acquired by a municipality through dedication for the reason

that such question was not a proper subject for consideration therein. With respect to Oklahoma Ry. Co. v. Severns Paving Co., supra, special language of conveyance was used in the dedication which limits the usefulness of the case in the case at bar. Further consideration of our former decisions will be deferred for the purpose of stating our conclusions.

From a study of the wording of our statute, the history of its development, the decisions of other courts dealing with it in the course of its development, and the decisions of other court dealing with other statutes relating to the same subject, we have concluded:

1. That with reference to quality of interest or title conveyed the statute places property dedicated by means of a plat in two general classes, depending upon the language used in connection with its dedication.

2. The first class is that which is comprehended by the language of section 515, supra, preceding the semicolon and is marked on the plat as a "donation or grant."

3. The second class is that governed by the portion of the statute succeeding the semicolon. It is not "granted or donated," but merely dedicated.

As to the first class a qualified fee-simple title (sometimes referred to as a base fee) is conveyed and the dedicator divests himself and his heirs of all further interest in the property. The qualification of the fee merely enables any person properly interested to enforce the continued use of the property for the purpose for which it was donated or granted or prevents its use for other purposes, at least so long as it is suitable for the designated use.

As to the second class an easement only is conveyed and the fee subject to the easement remains in the dedicator and passes to his successors.

Our conclusion as applied to this case sustains the position of the municipality. It has a qualified fee simple in the tract "donated" and now being used for a cemetery. The dedicator by designating the same on the plat divested himself and his heirs and successors of any interest in the property. It became and is the property of the municipality subject only to its continuing duty to use it only for the purpose for which it was donated.

These conclusions are announced independent of rather than because of our former decisions. As previously noted, with one qualified exception, our former decisions do not bear upon the question and are not helpful. However, their presentation in the briefs requires their analysis in this opinion.

In the case of City of Tulsa v. Aaronson, supra, the city was claiming ownership of a tract of land. It asserted acquisition of the same by dedication and by conveyance by deed placed in escrow. The court decided the city had no title or interest, fee simple, easement, or otherwise (except an easement for sewer purposes). The judicial denial of any interest in the city dispensed with any necessity of determining what interest the city would have had if such an interest or title had existed.

In Minton v. Smith, supra, the nature of the right or title acquired by dedication was not involved. The question was whether property dedicated to public use was being privately obstructed. The nature of the city's interest in dedicated property was not in question.

Siegenthaler v. Newton, supra, was another case in which the question was whether a dedication to public use had been made, not the extent of the interest conveyed by such dedication. Incidentally, it was observed generally in that case that a common-law dedication was just as efficacious as a statutory dedication, which (since, as we have noted, a common-law dedication for public purposes created an easement) carries the inference that an easement only is created by a statutory dedication. But the case is not in point here, or an unwarranted liberty would

be taken to regard the implications arising from its language as controlling.

Fortson Inv. Co. v. Oklahoma City, supra, was a case in which the title of the city rested on a warranty deed, not a dedication.

Thomas v. Farrier, supra, was a case in which a dedication to the public was upheld, but the right of user by the public asserted and therein judicially approved did not approve a use beyond that permissible under an easement, and that case does not constitute authority for the assertion that a fee-simple title is conveyed by dedication.

Kee v. Satterfield, supra, involved a dispute arising out of a sale of land subsequently platted. One question involved was whether a dedication had been made, not the extent of title conveyed by such dedication.

In Oklahoma City v. State ex rel. Williamson, supra, the property involved (a park) was dedicated by plat to the city of Oklahoma City for the use of the public with provision for maintenance by the city. The dedication, so far as the city was concerned, was ineffective because not accepted. The extent of the title or interest which would have vested had there been an acceptance was not determined.

Herold v. Dowell, supra, approved an inadequate dedication by reason of continued public use acquiesced in by the owner. The extent of the title acquired was not determined.

In Chas. E. Knox Oil Co. v. McKee et al., supra, an oil company had obtained a lease on a portion of property formerly dedicated for church and cemetery use. The lease was obtained from a church which had received a qualified deed to a portion of the property. The lease which was upon the deeded portion of the property was held ineffective. The extent of the title or interest previously conveyed by dedication was not determined.

The case of Oklahoma Ry. Co. v. Severns Paving Co., supra, when analyzed, lends support to the conclusions which we have previously announced, although the language of the statute (section 511, R. L. 1910, now section 515, supra) was not treated and considered in detail.

The dedication of a strip of land to the railway company was therein definitely held to convey a fee and the quality of the title was therein treated as a governing legal issue in the case. The dedication used much more specific language than the statutory requirement of noting on the plat that the land was a "donation or grant." Sufficiently stronger in fact that it would afford the basis of a distinction if our independent judgment were that dedication under the statute in all cases conveyed only an easement. However, the case treats the statute as the agency which vests the fee by operation of the language used. It does not rest its decision on the force and effect of the language independent of the statute. Thus the basis and theory of the decision supports the view that when the words "donation or grant" or words of similar import and just as strong or stronger are used on a plat, the fee-simple title is conveyed by the dedication. The words used in that case and the basis of the conclusion announced appear from the following quoted excerpts taken from the body of the opinion:

"The fee title to the strip of land in question here appears to be in the railway company. In the dedication to the city this strip was referred to in the following language:

" 'Said strips of land are set aside for the exclusive use of and dedicated to the Oklahoma City and Suburban Railway, its successors and assigns, with like effect as though deeded and conveyed to said company in fee simple by separate deed.' . . .

"The railway company here holds an entirely different estate. Its right is not merely an intangible privilege or an easement, but under the terms of the dedication is a fee-simple title. Under the provisions of section 511, Rev. Laws 1910, the terms of the dedication are to all intents and purposes a general warranty and sufficient conveyance

to vest the fee simple of the lands described therein. . . .

"The company took the fee from the original grantors by the dedication before the abutting owners acquired their titles."

The court then held that the land of the railway company was subject to paving assessments because it was a fee simple as distinguished from an easement. Whether it could have justified the assessment on another and lesser estate is another question, not appropriate for our consideration herein.

The property involved in that case clearly fell within what we have herein denominated as class one under the statute.

Since the cemetery in this case falls within the same class, the cited case supports our conclusion as previously stated when reference is restricted to the reason or theory upon which it is written. But the added strength of the language used in the plat in that case deprives the case of sufficient similarity on the facts to prevent us from treating it as controlling precedent without further research. We therefore turn for further guidance to other jurisdictions.

Our statute (section 515, supra) was brought to this jurisdiction from the territory of Dakota by our own territorial Legislature (Statutes 1890, § 736). It was section 1099, Compiled Laws of Dakota, 1887. See historical notes in connection with 11 O. S. 1941 § 515 and R. L. 1910 § 511. It had been part of the statutory law of that jurisdiction since January 14, 1875. It was section 5 of chapter 26 of the Political Code then adopted and approved in that jurisdiction. It is still retained by both North Dakota and South Dakota. North Dakota Comp. Laws 1913, § 3946; South Dakota Rev. Code 1919, § 6541.

In connection with the cases from other jurisdictions, it is not unusual, as in our prior decisions, to find general and sweeping declarations, accurate enough when applied to the particular case, but inaccurate when applied generally.

The territorial courts of Dakota hád not, prior to our adoption of the statute, construed the statute with reference to the character of title or interest conveyed by dedication, so controlling precedent is not to be found there. Subsequently, the courts of both North and South Dakota have alluded to the statute and the character of interest conveyed by dedication. Donovan v. Albert, 11 N. D. 289, 91 N. W. 441, 58 L. R. A. 775; Northern Pacific Railway Co. v. Lake, 10 N. D. 541, 88 N. W. 461; Ramstad v. Carr, 31 N. D. 504, 154 N. W. 195; Edmison v. Lowry, 3 S. D. 77, 52 N. W. 583, 17 L. R. A. 275. They have both said the interest is an easement as distinguished from a fee, but in the cases a mere dedication was involved. Property marked on the plat as a "donation" or grant was not under consideration. Their declarations thus dealt with property falling under the second part of the statute, and on the basis of the classification outlined in our conclusion square with our declaration in Oklahoma Ry. Co. v. Severns Paving Co., supra. They also, when analyzed, support our conclusion herein. However, in the Dakota decisions the language of the statute was not carefully analyzed.

Further research indicates that the statute came to Dakota territory from Minnesota. It became a part of the laws of Minnesota on March 3, 1849, by section 12 of the Organic Act of Minnesota. The law was adopted by Minnesota from Wisconsin (Betcher v. Chicago, Milwaukee & St. Paul Railway Co., 110 Minn. 228, 124 N. W. 1096). In Wisconsin the law was adopted in 1839 (Wisconsin Statutes of 1898, p. 1634, § 2263 and historical note).

Apparently the statute came to Wisconsin from Indiana. At least, an early forerunner of our statute is found in that jurisdiction. It appeared there in 1818 as section 2 of an act approved January 21st of that year. It later appeared as section 2 of chapter CVII, Re-

vised Laws of Indiana 1831, p. 530. A former enactment in that jurisdiction of similar wording was section 2 of an act approved December 5, 1811, alluded to in Conner v. President and Trustees of New Albany (Ind. 1819) 1 Blackford 43.

The statute as it was re-enacted in 1818 read:

"Sec. 2. Every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on the plat of the town wherein such donation or grant may have been made, shall be considered to all intents and purposes as a general warranty to the said donee or donees, grantee or grantees, for his, her, or their use, for the purposes intended by the donor or donors, grantor or grantors, aforesaid."

This early statutory provision is still retained in Indiana, but it is now only a part of a section of the statute. See Burns, Indiana Statutes (1933) vol. 9, p. 46, § 48-801. The other added portions of the statute, however, do not purport to enlarge the interest conveyed. The language employed in the statute, insofar as it may be deemed to bear on the question herein, has not been changed.

The Indiana court, in considering the character of interest passing under the early law as applied to streets, said in Conner v. The President and Trustees of New Albany, 1 Blackford's Reports 43 (1819):

". . . This grant of a public highway is warranted to the grantee, or grantees, by the operation of the before mentioned act of Assembly. . . . A way, whether public or private, where styled a road or a street, leading through town or country, is an incorporeal hereditament. It is not the land, nor an unqualified use of it, but a privilege of passing over it. . . ."

At a later date, 1874, the same court said (with reference to the 1818 version of the statute quoted supra) in Cox v. Louisville, New Albany & Chicago Railroad Co., 48 Ind. 178:

"In some of the states, as in Iowa, for instance, the statute with reference to town plats, expressly provides that the making and recording of the plat shall pass the fee simple of the land over which the streets run. Milburn v. The City of Cedar Rapids, 12 Iowa, 246.

"Had our statute such a provision in it, its construction would necessarily be different. The part of section 2 of our act, declaring that the marking or noting of a donation or grant shall be considered 'a general warranty,' does not enlarge the grant. It simply means that the plat shall be construed as a general warranty of what is thereby granted. Where a donation or grant is made, by an appropriate mark or note on the plat, of a lot or square, there, as the fee of the property is intended, there is no difficulty in holding that such an estate passes. . . ."

Thus the Indiana court in discussing the Indiana statute specifically pointed out that the statute made no reference to the passing of a fee by the use on the plat of the words "donation or grant," but stated if the statute were worded in such a manner as to give the words that effect, the court would probably hold that the fee passes.

Bearing in mind the omission from the statute of the words authorizing the passing of a fee, let us pass to a consideration of the later version of the statute adopted in Wisconsin in 1839. That statute read:

*"When any map shall have been made, certified, signed, acknowledged and recorded as above in this chapter prescribed,* every donation or grant to the public or any individual or individuals, religious society or societies, or to any corporation, marked or noted as such, on said plat or map, *shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land as are therein expressed,* and shall be considered to all intents and purposes, a general warranty against such donor or donors, their heirs and representatives, to the said donee or donees, grantee or grantees, for his, her or their use, for

the uses and purposes therein expressed and intended, and no other use or purpose whatever; *and the land intended to be for the streets, alleys, ways, commons or other public uses as designated on said plat, shall be held in the corporate name of the town, city or village in which such plat is situated, in trust to and for the uses and purposes set forth, expressed and intended. . . ."* (Emphasis ours.)

In 1878 an addition consisting of an added sentence was made to the Wisconsin statute with reference to the evidentiary effect of the plat. This addition to the statute was not carried into Minnesota, Dakota, or Oklahoma.

In our above quotation of the Wisconsin statute we have emphasized the portions thereof which were not literally or in substance in the Indiana statute.

The first of these additions by insertion purported to give a notation of a donation or grant on the plat, the effect of conveying a fee title for the specified use.

The second added clause deals with mere dedication not designated as a donation or grant.

The statute as it existed in its abbreviated form was adequate for the creation of easements. Indiana has found it so and still retains it, apparently having no legislative desire to enlarge the estate.

It cannot be presumed that the carefully worded additions adopted in Wisconsin were an empty gesture without rhyme or reason. The first was obviously intended to enlarge the character of the estate or interest conveyed when the dedication was marked a grant. It provided a simple means of conveying by dedication a fee, as distinguished from an easement, for a specified use. The second addition was to take care of property not falling within the class marked as a donation or grant.

The Wisconsin idea of making provision for enlarging the character of

the estate was probably borrowed from the Michigan Statutes of 1827, which had previously been in force in the territorial limits of Wisconsin. The Michigan Statutes of 1827 provided for a fee title (qualified by the intended use) but did not make the quality of the title dependent upon a notation on the plat of a "donation or grant." Thus, mere dedication without specific notation under the Michigan statute conveyed an estate enlarged from a common-law easement to a base fee. Many of the Wisconsin cases deal with the early Michigan statute. They are in point in connection with the later statute to the limited extent that the idea of an enlarged estate by dedication was carried forward to and interpolated with the Indiana statute to form the later Wisconsin statute.

Bearing in mind this development and the above-mentioned survival in part of the theory of the early Michigan statute which has become a part of our own statute, the decision of the Wisconsin court in Thorndyke v. City of Milwaukee, 143 Wis. 1, 126 N. W. 881, is particularly instructive. The court was dealing with the dedication to the public of a prescribed square in contemplation of the future erection of a "market house." The dedication had been made in 1835 under the Michigan statute. The early Michigan statute was quoted:

". . . Sec. 2. That such maps or plats as are required by this act to be recorded shall particularly set forth and describe all the public grounds within such town by its boundaries, courses, and extent and whether it be intended for streets, alleys, commons or other public uses, and all the lots intended for sale by progressive numbers and their precise length and width; and the maps made and acknowledged before a justice of the peace, a justice of the county court of the proper county where the land lies, or before a Judge of the Supreme Court, and certified under the hand and seal of the Judge or Justice taking such acknowledgment and recorded, shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended to be for public uses

100

in the county in which such town lies, in trust to and for the uses and purposes therein named, expressed or intended, and for no other purpose whatever."

(Attention is directed to the similarity of the language used to describe the quality of title conveyed by dedication and to limit the use of the language appearing in our own statute and interpolated with the language of the early Indiana statute.)

The question before the Wisconsin court was whether the dedicator had parted with his entire estate by the dedication. The court held he had. In disposing of the question the court recognized some inconsistency in its own prior decisions. It said:

". . . . But, with respect to public squares created by statutory dedication, it was held in Williams v. Smith, 22 Wis. 594, that the city of Janesville could join with the owners of lots abutting upon a public square in a suit to prevent the diversion of the use of a square from that to which it was originally dedicated. In Williams v. Milwaukee Ind. Expo., 79 Wis. 524, 48 N. W. 665, it was said with reference to the public square here in question that one to whom Byron Kilbourn, after filing his defective plat, granted an undivided interest in all the platted land, but who began a suit after the enactment of the curative statute, had no interest in the square in question. But in Milwaukee v. Railway Co., 7 Wis. 85, it was held that the city had no such interest in a public square as would enable it to maintain an action to enjoin the railroad company defendant from constructing its railroad in such square. This condition of the precedents in this state with reference to public squares under a statutory dedication leaves this court free to re-examine and construe that statute so far as the same relates to public squares. *Upon the face of these statutes, it is very clear that, as soon as the statutory dedication took effect, Byron Kilbourn, or those claiming under him, parted with the title in fee to the municipality. When the municipality took the fee in trust for the public, this conveyance left no residue of title or interest in the dedicator or those claiming under him by virtue of*

*which they could claim any present interest in the dedicated land.* So far as the case relates to public squares created by statutory dedication, Milwaukee v. Railway Co., 7 Wis. 85, is overruled. These trusts for the benefit of the public come under the law relative to charitable trusts, so far at least as the enforcement of the trust is concerned. 1 Beach on Trusts and Trustees, § 317, and cases in note; Armstrong v. Portsmouth, supra; Lackland v. Walker, supra. This is a very ancient rule of the common law, and the right of the grantor in such conveyance, if it existed, would be a mere right of action, and not an interest in the property. When we consider that such trusts may last for centuries, we get a suggestion of at least one of the reasons for this rule so far as public or charitable trusts are concerned. But the rule itself is firmly established. If the plaintiffs have no interest differing from that of any other member of the public in preventing the misuser of this property, they cannot maintain an action in their own right as heirs of the dedicator. We are convinced that the plaintiffs have no present interest in this public square, special or peculiar to them, and differing in nature from the interest of other members of the public. . . ." (Emphasis ours.)

In the decision casual reference was made to section 2263, Rev. Statutes 1878 (the forerunner of our present statute), and of that it was said:

" . . . . This latter statute also gives the plat the legal effect of a conveyance in fee, an effect beyond that of a common-law dedication. The trustee named in these statutes is different, but the title conveyed in trust is not."

It thus appears that in Wisconsin, one of the original sources of our statute, the word "fee," as used in connection with a dedicated title, means precisely that, and that the qualification with respect to use does not operate to reserve any part of the fee in the dedicator.

Passing from Wisconsin to Minnesota, where our statute retained the Wisconsin wording, we find the Minnesota court, at an early date, calling attention to the importance of the two clauses

of the statute, and mentioning the importance of noticing the distinction.

In 1865, the Supreme Court of Minnesota, in the case of Schurmeier v. St. Paul & Pacific Railroad Co. et al., 10 Minn. 82, said:

"The first clause of the section refers to 'donation or grants marked or noted as such in the plat,' and we think has no reference to the land to be used for streets, landing, etc. As to the lands marked on the plat as granted or donated, the statute declares that this shall be deemed in law and in equity a sufficient conveyance to vest the fee simple; but as to the lands intended for streets and alleys, the language is not that a fee simple shall pass, but that it 'shall be held in the corporate name in trust to and for the uses and purposes expressed or intended.' The change of phraseology is quite significant. In the latter case we think it is manifest that the intention of the statute was not to pass the fee simple, but merely such an estate or interest as the purposes of the trust required. The use for which the dedication was made, therefore, determines the extent of the right parted with by the owner and acquired by the public or corporate authorities of the town. Neither the use for which the dedication was made, nor the language of the statute justifies, in this case, the conclusion that a legislative transfer of the fee was intended, and without such transfer, it remains in Roberts and his grantees. 2 Smith Lead. Cas. 215."

This expression of the Minnesota court is important, since it is the most clear-cut judicial expression on the meaning of our statute which was in existence at the time the statute was adopted by Dakota (1875), and also at the time it was adopted by our own territorial Legislature. It is the construction which we are deemed to have adopted along with the statute.

In analyzing subsequent expressions of the Minnesota court and the courts of the Dakotas, the existence of the independent clauses in the statutes must be kept in mind. As, for instance, in the Minnesota case of Betcher v. Chicago, Milwaukee & St. Paul Ry. Co., supra, the Minnesota court referred to a dedication as creating an easement, but it was dealing with dedicated property which had not been marked on the plat as a "donation or grant," and which therefore fell under the second clause of the statute. The same is true in all the Dakota decisions previously cited.

It is urged that notwithstanding the presence of the words in our statute indicating a fee-simple title should pass, dedication under the first clause nevertheless conveys only an easement because of the presence in the statute of the words relating to the use. These same words were in the Michigan statute of 1827. They were also in the Wisconsin statute of 1838. They were thus in both statutes referred to by the Wisconsin court when in Thorndyke v. City of Milwaukee, supra, it was held the dedicator retained no interest. They were also in the statute before the Minnesota court when, as above stated, in 1865, it declared a fee did pass when tracts dedicated to the public, etc., are marked on the plat as a donation or grant.

Iowa, Nebraska, and Illinois all have, or have had, statutes providing for the passage of a fee by dedication but which identify the dedication with the use for which it was made, though the language respecting the use (with the exception of Illinois) is less emphatic than our own. The courts of those states have held that a fee passes under such a statute. Pettingill v. Devin, 35 Iowa, 344; City of Des Moines v. Hall, 24 Iowa, 234; Carroll v. Village of Elmwood, 88 Neb. 352, 129 N. W. 537, 33 L. R. A.(N. S.) 1053; Jaynes v. Omaha St. Ry. Co., 53 Neb. 631, 74 N. W. 67, 39 L. R. A. 751; Mattheisen & Hegeler Zinc Co. v. City of La Salle, 117 Ill. 411, 2 N. E. 406, 8 N. E. 81. The Iowa view illustrates the statutes and court decisions in those states.

Section 637 of the Iowa Code of 1851 provided:

"The acknowledgment and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use, or

102

is dedicated to charitable, religious or educational purposes."

Under this statute the Iowa court held in City of Des Moines v. Hall, 24 Iowa, 234:

"The laying off and recording a town plat or of an addition thereto under said chapter 41 of the Code of 1851, had the effect to vest in the corporation the fee-simple title to and exclusive right of dominion over the streets and alleys thus dedicated to the public use. In such case neither the original proprietor nor his grantees have the right to the subterraneous deposits of coal within the limits of such streets, and the corporation may maintain an action against him for coal mined and taken by him from beneath the same."

The Missouri court, on the other hand, strongly favors a limited fee in the nature of an easement under a statute containing wording as to use similar to that appearing in the first clause of our statute. Neil v. Independent Realty Co., 317 Mo. 1235, 298 S. W. 363, 70 A. L. R. 550; United Cemeteries Co. v. Strother, 332 Mo. 971, 61 S. W. 2d 907, 90 A.L.R. 438.

It is apparent from a careful study of the foregoing cases and other cases being under consideration that the question of whether the dedicator divests himself and his heirs of any interest in the property by dedication and acceptance under statute such as the first clause of our statute providing for the conveyance of the fee by dedication but expressly providing that the fee shall be held in trust for a specified use is a very controversial one. On it there is considerable division of authority.

However, in view of the presence in our statute of two clauses, one covering property noted on the plat as a donation or grant, the other property not so marked, and the use of language in connection with the first class of property appropriate to the conveyance of a fee and the exclusion of such language from the latter and the obvious deliberation which, as shown by the history of the statute, was employed in the choice of the language used, we are constrained to, and do hold, that upon dedication and acceptance under the first clause the municipality acquired the fee which carried with it the mineral rights. It follows that the city was entitled to prevail in this case.

In order that the scope of our opinion may not be misunderstood, we call specific attention to the fact that this case involves a cemetery, a class of property that appropriately falls within the general words used to classify property subject to donation or grant, and that cemeteries are not specifically mentioned in the second clause. As to streets and alleys, which are specifically mentioned in the second clause, some question may exist as to whether marking them "donated or granted" could bring them under the general language of the first clause. Similarly, the use of the property for cemetery purposes has not in this case been abandoned. We express no opinion as to the legal effect of such an abandonment on the title or right of continued ownership and use for other purposes. Nor do we express any opinion as to whether the proceeds derived from mineral rights connected with the property (if such proceeds can be derived in such a manner as to be consistent with its continued use for cemetery purposes) are irrevocably devoted to expenditures for cemetery purposes. The foregoing and other questions not involved here must await an appropriate occasion for their decision.

The decision of the trial court is reversed, with direction to enter judgment for the city.

WELCH, C. J., and RILEY, OSBORN, BAYLESS, and GIBSON, JJ., concur. CORN, V. C. J., concurs in conclusion. HURST and ARNOLD, JJ., absent.