OKLAHOMA CITY v. STATE ex rel. MARLAND, Gov.

No. 29701. Feb. 1, 1944.

Dissenting Opinion Feb. 8, 1944.

*145 P. 2d 418.*

A. L. Jeffrey, Municipal Counselor, and Leon Shipp, Asst. Municipal Counselor, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, First Asst. Atty. Gen., for defendant in error.

BAYLESS, J. The action out of which this appeal arises is somewhat similar in character and subject matter to the one of the same title appealed as cause No. 28375, and reported at 185 Okla. 219, 90 P. 2d 1064.

The property involved consists of three parcels of land in Oklahoma City, designated as blocks 2, 5, and 8 of the Amended Second State Capitol addition on a plat filed in the office of the county clerk of Oklahoma county. The blocks resemble a boulevard and are between two paved streets known as McMechan Parkway, and for several years have been possessed, maintained, and improved by the city as public parks.

In the early part of 1937 an oil operator obtained an oil and gas mining lease on the blocks in question, executed on behalf of both the city and the state as lessors. The lease bonus money was deposited in escrow to await the judicial determination of which of the two purported lessors owned the mineral rights thus leased and was entitled to said money.

The present action then followed. Both the city, as plaintiff, and the state, as defendant and cross-petitioner, prayed that fee-simple title to the land be quieted in each against all claims of the other. The court granted neither of the prayers in toto, but rendered a judgment determining the state to be the owner of all the minerals and mineral rights in and to said land, and at the same time decreeing the city to be entitled to it for park purposes and to have its title quieted as against all claims and demands of the state, except insofar as the minerals and mineral rights were concerned.

In appealing from said judgment the city maintains that the trial court should have quieted the fee-simple title to the property in it, while the state in a cross-petition in error contends that the court erred in refusing to quiet the same complete title in it.

In support of the state's position our attention is directed to the fact that the land involved was all a part of a larger tract once known as "Capitol Building Lands," and it is asserted that the state has never been divested of· the fee-simple title thereto acquired from the State Capitol Building Company. The city, on the other hand, claims that when the blocks in question were marked out in the center of a city street on the plat, hereinbefore mentioned, and said plat, as well as the survey in connection therewith, was caused to be made, certified, and recorded by officers of the State Board of Affairs and Commissioners of the Land Office purportedly on behalf of the state, said property was dedicated to the city as provided by art. 7, ch. 33, O. S. 1931, 11 O. S. 1941 § 511 et seq., and according to sec. 6141, O.S. 1931, 11 O.S. 1941 § 515, was "a sufficient conveyance to vest the fee-simple" title to said blocks in the city. As additional evidence of said officers' intention to dedicate said blocks it is pointed out that the instrument executed by them and attached to the plat expressly purported to "dedicate . . . all of the streets, parks, parkings and parkways shown upon said plat to public use," and provided that the blocks in question, among others, "lying within McMechan Parkway are hereby dedicated to the city of Oklahoma City for the use and benefit of the general public, provided always that the city of Oklahoma City shall maintain, care for and manage at its own expense, said parks."

While denying that a statutory dedi-

cation under sec. 6141, supra, is equivalent to a conveyance of fee-simple title, the state also maintains that such a dedication of the property in question could not have been accomplished by the state officials hereinbefore mentioned because same was never authorized by legislative enactment. In support of the latter proposition our attention is directed to the fact that title thereto was vested in the·state by deed of July 3, 1914, and it is asserted that none of the statutes or legislative resolutions passed since that time have authorized the dedication of any of said land.

We think it is unnecessary to determine in this case the issue of the power of the Commissioners of the Land Office to plat public parks and convey them in fee to the public as a gift or donation or grant as a part of the process of platting public lands as townsites or as additions to towns. Since this appeal arose we have had occasion to consider and construe 11 O. S. 1941 § 515 (§ 6141, O. S. 1931), and the decision rendered therein clarifies the issue here. Langston City v. Gustin, 191 Okla. 93, 127 P. 2d 197. In that case we held in effect that sec. 515, supra, consisted of two parts: that a dedication to the public under the first part thereof was sufficient to convey a qualified or base fee title if it plainly appeared by the˚ conforming of the plat or map and the language used to the statutory conditions specified; and that a dedication under the second part conveyed an easement only. A consideration of the plat or map originally and as amended, and the language used, discloses that the words "donation or grant" are not used. The particular tracts of land are not marked for park purposes on the map or plat, and a study of the map or plat, unaided by resort to extrinsic writings, would not disclose that these tracts were even designed for park purposes. When resort is had to the language of the dedication, it does not conform to the first part of the section, supra, by the use of the words donation or grant, but is wholly consonant with the second part of the section that relates to easements only.

Thus, if it should be conceded that the state, acting through the agents aforesaid, had the power under 64 O. S. 1941 § 193, and 11 O. S. 1941 § 515, to convey in fee, without direct and specific consideration, land for use as public parks, it is clear that the state did not exercise that power in this instance.

We are of the opinion that under the express powers granted by the Constitution and pertinent statutes relating to the sale and disposal of public lands, the platting of the same for townsites or additions to towns and the sale of town lots, there was necessarily implied the power to lay out streets, and alleys, and parkways, to dedicate to public use an easement for such purposes. Insofar as streets and alleys are concerned, it is necessary that such be provided or townsites or additions to towns would not be practicable or even possible.

The tracts involved here are rather small, being in the middle of McMeachan Parkway, and are bounded on the east and west sides by divisions of that parkway and at each end by the cross streets running east and west. The parkway has the appearance on the map of a boulevard (9 C. J. 143). By common consent the parties hereto have treated them as parks, and the city conclusively has so treated them. The state urges that it is as able to establish and maintain a park as the city, and that there is nothing in the record to show the power on its part to convey an easement for park purposes without consideration. Thus, it argues that these parks are state owned.

We do not agree entirely. The state is as able to establish and maintain public parks as is the city. Section 193, supra, expressly mentions public parks as one of the purposes for which land governed thereby may be platted and sold. But has it so done in this instance? The record is clear that while the state may have platted them for public park purposes, and, by the language of the dedication, dedicated them for that purpose, it has never maintained them as such.

Such burden has been assumed by the city.

The only purpose in permitting the state to plat land owned by it under section 193, supra, is to permit the state to sell the property to the best advantage of the state.

Surely no one would contend that the state in platting said property is to be restricted in the width of the streets and alleys to be platted, nor could it be prevented from platting boulevards or parks or parkways if in its discretion it would be more profitable to do so. We believe the state has a reasonable discretion with respect to a number of factors that present themselves to the owner of a tract of land which he intends to plat into lots and sell. The width and pattern of the streets and alleys, the size and arrangements of the blocks and lots, and the general topography are among these factors. It is a reasonable discretion to decide that the platting of a park or small parkway as in this instance will enhance the sale price of lots in the addition. We are of the opinion that state platted, dedicated, and conveyed these tracts for public parkways, and that the trial court correctly established and quieted city's title to an easement for such purposes.

The judgment holding that state has title to the minerals, and holding that city has title to an easement for park purposes to the land involved, is affirmed.

CORN, C. J., GIBSON, V. C. J., (in conclusion), and RILEY, OSBORN, and DAVISON (in part), JJ., concur. WELCH and DAVISON (in part), JJ., dissent. ARNOLD, J., not participating.

---

DAVISON, J. (concurring in part and dissenting in part). I concur in the view of my associates that the city of Oklahoma City acquired no interest in the oil, gas, and mineral rights connected with the land which has been maintained by the city for park purposes. Clearly, the language used on the plat in connection with the parks was inadequate to convey the fee to the city. Langston City v. Gustin, 191 Okla. 93, 127 P. 2d 197.

The language used in the purported dedication of the parks was, as held in the majority opinion, sufficient to convey an easement for park purposes. However, the language was ineffective in this case because it attempted to make a gift of property belonging to the state when only a sale was authorized.

64 O. S. 1941 § 193 provides:

"The Commissioners of the Land Office shall reserve from sale, any lands lying near or within the limits of any city, or town, which may have a greater value than for farming purposes, by being platted and sold as town lots, acreage tracts, or public parks; and said Commissioners shall cause said lands to be surveyed, platted, appraised and sold at public auction for such purposes, and the lessee shall have the preference right to buy at the highest and best bid."

Under this section the state could plat and sell parks, but it could not plat and give away the same.

A sale is distinguished from a gift in that the former is supported by consideration whereas the latter is not. Consideration is defined in this jurisdiction by 15 O. S. 1941 § 106, which provides:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The attempted conveyance of the asserted easement in this case was by dedication. At the time of that dedication no one had paid or agreed to pay anything for the parks. No one had obligated himself to confer any benefit on the state by reason of the dedication or to suffer any detriment in consid-

524

eration thereof. The suggestion is made that at a later date it was hoped other portions of the platted tract might be sold as lots for a higher price by reason of the parks. That, however, was at the time of the attempted conveyance no more than a "wistful vista of hope." No one had then paid or agreed to pay an enhanced price. The transaction with reference to the parks cannot be thus deprived of its classification as a gift—an attempted conveyance without consideration.

I do not share the view that a power to give may be implied from a power to sell. On the contrary, since the legislative direction is specific in alluding only to the sale, the implication is that the other character of transaction is excluded. The applicable maximum of statutory interpretation is "expressio unius est exclusio alterius."

The city has also invoked the doctrine of estoppel in this case. It maintains that the state is estopped to deny that the acts of the Board of Affairs and Commissioners of the Land Office were unauthorized because of having subsequently sold lots in the same addition as the blocks in question on the basis of the recorded plat thereof and having received increased prices for many of them (especially those near the parks) on account of the city's expenditures in improving and maintaining said blocks as public parks. The state answers this argument by citing the rule that estoppel does not apply to the unauthorized acts of government officials. The state's proposition appears to be supported by the authorities and the city cites none to the contrary. For instance, in Airy et al. v. Thompson et al., 154 Okla. 1, 6 P. 2d 445, we held:

"All persons dealing with officers or agents of counties are bound to ascertain the limits of their authority or power as fixed by the statutory or organic law and are chargeable with knowledge of such limits. No estoppel can be created by the acts of such agent or officers in excess of their statutory or constitutional powers. 15 C. J. 541; In re Town of

Afton, 43 Okla. 720, 144 P. 184; L.R.A. 1915 D, 978."

See, also, Layne-Western Co. v. City of Depew, 177 Okla. 338, 59 P. 2d 269; State ex rel. Veale v. Paul, 113 Kan. 412, 214 P. 425; 19 Am. Jur. 818, sec. 166.

It is therefore my opinion that the purported dedication of parks herein involved constituted an attempted gift of the property of the state; that such method of disposition of state property was wholly unauthorized and therefore void, and that Oklahoma City owns neither the fee nor an easement in the "parks" here involved.

I therefore respectfully dissent in part.