The CITY OF BARTLESVILLE, a Munici-
pal Corporation, Plaintiff in Error,

v.

Lewis B. AMBLER et al., Defend-
ants in Error.

No. 43192.

Supreme Court of Oklahoma.

Dec. 21, 1971.

Rehearing Denied Aug. 1, 1972.

Brewer, Worten & Robinett, by Chester A. Brewer, Jesse J. Worten, Bruce W. Robinett, Bartlesville, for plaintiff in error.

Gable, Gotwals, Hays, Rubin & Fox, by Charles P. Gotwals, Jr., Tulsa, and Allan H. Stocker, Bartlesville, for defendants in error.

McINERNEY, Judge:

At the time this suit was commenced, plaintiffs owned fourteen residential properties in Pennington Hills Second and Third Additions to the City of Bartlesville. Turkey Creek meanders through parts of these additions; plaintiffs' back yards are adjacent to this creek. As a part of a flood control project, Defendant City of Bartlesville planned to co-operate with the United States Corps of Engineers in the construction of a drainage ditch to replace the natural channel of Turkey Creek. Plaintiffs' back yards would be adjacent to the completed drainage ditch.

According to plans prepared by the Corps of Engineers, the proposed drainage ditch would have a natural bottom, sloping concrete sides and an open top. At the bottom, the ditch would be 45 feet wide; the side slope would result in a width of 87 feet at the top. The ditch would be 10 feet deep, and it would be enclosed by a four foot chain link fence with a top rail.

On the plats of Pennington Hills Second and Third Additions, the owner designated certain easements along each side of the Turkey Creek channel. The easement on the south side of the creek was designated as a drainage and utility easement. The easement on the north side was designated as a drainage easement only. The utility easement was separately designated on the north side, but parts of it were located adjacent to the drainage easement. Since the City claims it has the right to use these easements for construction of the proposed drainage ditch, we will refer to them as drainage easements.

From the exhibits in the record, it appears that the drainage easements follow the natural channel of Turkey Creek, but the easements may have deviated from the channel in some instances. However, the extent of variation, if any, cannot be determined from the exhibits, and neither party introduced direct evidence to establish the exact location of the easements in relation to the Turkey Creek channel.

Under the proposed construction plans, the drainage ditch would rechannel and straighten Turkey Creek. In part, the change in the flow of Turkey Creek resulted from the City's request that the Corps utilize to the extent possible only the properties designated as drainage easements. However, the Corps considered other factors in designing the ditch. To some extent, the Corps selected the channel course which, according to prudent engineering practices, would increase the amount of water that could flow through the ditch in a fixed period of time. But the Corps laid out the ditch so that each property owner on both sides of the ditch would have what the Corps considered to be a reasonable back yard.

Property within and without the areas designated as drainage easements would be used for the channel of the proposed drainage ditch. Many trees, some shrubs and several fences would have to be removed from this channel area. Additional property would be required along each side of the channel to be used for temporary construction easements. These construction easements would be located both inside and outside the boundaries of the drainage easements, and it would also be necessary to remove the trees, shrubs and fences from this property.

Plaintiffs brought this suit to enjoin construction of the proposed drainage ditch. They alleged that the ditch would constitute a misuser of the drainage easements, that their properties would be taken without compensation and that the ditch would be a nuisance. Defendant City cross-petitioned to have title to the properties designated as drainage easements quieted in it.

After a trial to the court without a jury, the court adopted the findings of fact and conclusions of law submitted by plaintiffs and rendered a judgment refusing to quiet title in the City to the properties designated as drainage easements, enjoining the City from entering plaintiffs' properties (including their properties subject to the drainage easements) for construction of the proposed drainage ditch and enjoining the City from constructing a drainage ditch of the size and design proposed. This judgment was based primarily upon the trial court's conclusions that the proposed drainage ditch would constitute a misuser of the drainage easements and that it would be a nuisance. The City appeals.

■ Relying on 11 O.S.1961, § 515, the City argues that it has a fee simple title to the properties designated as drainage easements. In Langston City v. Gustin, 191 Okl. 93, 127 P.2d 197 (1942), the Court analyzed Section 515, traced its history and reviewed several cases from other jurisdictions interpreting similar statutes. From this comprehensive study of Section 515, the Court concluded that a plat complying with this Section conveys a fee simple title only if the platter donates or grants property. Under Section 515, a dedication of property conveys an easement only; the fee remains in the platter and passes to his successors. Following *Gustin,* in Oklahoma City v. State ex rel. Marland, 193 Okl. 520, 145 P.2d 418 (1944), the Court reaffirmed its prior interpretation of Section 515 holding that a dedication of certain tracts for use as parks conveyed only an easement because neither donated nor granted had been used in the dedication or on the plat. Neither donated nor granted was used on the plats or in the dedications of Pennington Hills Second and Third Additions to the City of Bartlesville. Therefore, the City did not acquire a fee simple title to the properties designated as drainage easements.

Next, the City contends the trial court erred in determining that the proposed drainage ditch would constitute a nuisance. To support this contention, the City argues that, under the provisions of 50 O.S.1961, § 4, the ditch would not be a nuisance because construction of the ditch is authorized by 11 O.S.1961, §§ 663, 282. Section 663 authorizes a city council to alter the channels of water courses and to erect walls along the channels. Under Section 282, a city council can participate with a federal agency in the construction of a drainage structure.

Seeking to uphold the nuisance determination of the trial court, plaintiffs argue primarily that the proposed drainage ditch would be hazardous to small children because the sloping concrete walls would make it difficult to get out of the ditch during flooding. Yet, plaintiffs' expert witness, who was an architectural engineer, proposed a ditch similar in design which would have sloping concrete walls and would be the same depth; the only difference in plaintiffs' proposed ditch would be the width.

■ Authority to construct the proposed drainage ditch has been granted to the City by the Legislature. 11 O.S.1961, §§ 663, 282. Plaintiffs cited no authority holding a drainage ditch or similar channel constructed pursuant to statutory authority to be a nuisance, and our research disclosed none. The trial court erred in holding that the proposed drainage project would be a nuisance.

Plaintiffs' only challenge to the determination of necessity for the proposed drainage project was based on their claim that it would be a nuisance. Since we have concluded that the trial court erred in holding the proposed drainage project to be

a nuisance, we will not further consider plaintiffs' challenge to the determination of necessity.

Finally, the City asserts that it cannot be enjoined from proceeding with construction of the proposed drainage ditch. Though the City expressed in its brief an intention to condemn, before beginning construction, the portions of plaintiffs' properties outside the drainage easements which will be taken for construction of the ditch, the City concedes that plaintiffs have not received compensation for these properties and maintains that plaintiffs' only remedy would be a condemnation proceeding to determine their damages should the City attempt to utilize their properties without condemning them. According to the position taken by the City, property owners cannot prevent the construction of a public improvement by injunction. Instead, they must allow a municipality or other governmental body to use their land without condemning it; then they must initiate the condemnation proceedings if they are to receive any compensation for their properties. The City bases its position on a public policy argument that property owners should not be allowed to delay the construction of public improvements with injunction suits. The City cites only two cases to support its position: Oklahoma City v. Wells, 185 Okl. 369, 91 P.2d 1077 (1939); Oklahoma City v. Local Fed. Sav. & Loan Ass'n, 192 Okl. 188, 134 P.2d 565 (1943).

Answering the City's arguments, plaintiffs contend that, unless the City condemns their properties located outside the drainage easements, it can be enjoined from using them for construction of the proposed ditch. Further, plaintiffs argue that the City can be enjoined from using their properties which are subject to the drainage easements unless it condemns their interest in these properties. Plaintiffs base this argument on their contention that the proposed drainage ditch constitutes a misuser of the drainage easements.

In both Oklahoma City v. Wells, supra at 372, 91 P.2d at 1081, and Oklahoma City v. Local Fed. Sav. & Loan Ass'n, supra at 195, 134 P.2d at 574, the Court stated that a condemnation proceeding was the exclusive remedy available to a property owner whose land had been taken for public use without compensation. However, in both of those cases, the property had been taken and was being used for public purposes. The cases were brought to determine the damages resulting from the taking of the properties, not to enjoin the use of the properties.

In Town of Ames v. Wybrant, 203 Okl. 307, 309–310, 220 P.2d 693, 696 (1950), the Court indicated that the condemning municipality could be restrained from taking possession of the property until its right to condemn had been finally determined. The condemning municipality was threatening to take possession of the property before a challenge to its right to condemn had been heard and decided. The Court held that the right to condemn must be established as a prerequisite to the right of possession. 203 Okl. at 309, 220 P.2d at 695. Moreover, in Watkins v. Board of Commissioners of Stephens County, 70 Okl. 305, 309, 174 P. 523, 525 (1918), the Court specifically held that an injunction was a proper remedy to prevent the appropriation of private property for a county road without complying with constitutional and statutory provisions prescribing the procedure to be used in acquiring the property.

■ According to *Wybrant* and *Watkins,* a public body having the power of condemnation can be enjoined from appropriating private property for public use until it has initiated condemnation proceedings and had its right to condemn the property finally determined. Thus, until Defendant City condemns plaintiffs' properties admittedly located outside the drainage easements, it can be enjoined from using these properties for construction of the proposed drainage ditch.

■ In Town of Fort Cobb v. Robinson, 193 Okl. 660, 661, 143 P.2d 122, 123 (1944),

the Court indicated that a suit to enjoin a misuser of an easement could be maintained. We believe this statement expresses a sound rule of law; accordingly, we specifically hold that the misuser of an easement may be enjoined. Therefore, if the proposed drainage ditch constitutes a misuser of the drainage easements, then the City can be enjoined from misusing plaintiffs' properties which are subject to the easements for construction of the ditch unless it condemns plaintiffs' interests in these properties and compensates plaintiffs for their damages, if any.

Defendant City contends that the dedicator of the drainage easements contemplated improvements to the existing channel of Turkey Creek and dedicated the easements for that purpose. The City argues that the proposed drainage ditch will not be a misuser of the easements. In opposition to the City's position, plaintiffs claim that the dedicator intended only to preserve the natural drainage of the Turkey Creek channel, and that his purpose in dedicating the drainage easements was to prevent obstruction of this natural drainage channel. Thus, plaintiffs assert that the ditch will be a misuser of the drainage easements. Despite reaching conflicting results, both parties agree that the intent of the dedicator controls the determination of the issue of misuser.

■ If possible, the intent of the dedicator should be ascertained only from the marks, lines and statements on the plat. However, if his intent cannot be determined from the plat, the contemporaneous and subsequent acts of the parties may be considered in making this determination. Whitaker v. Town of Tipton, Okl., 426 P. 2d 336, 338 (1966); Minton v. Smith, 102 Okl. 79, 80–81, 227 P. 75, 76 (1924).

A review of the plats and dedications of Pennington Hills Second and Third Additions fails to disclose whether the dedicator contemplated a structure such as the proposed drainage ditch at the time it platted and dedicated the drainage easements.

Thus, we must consider other evidence to ascertain the intent of the dedicator.

The City stipulated that the dedicator, American First Title and Trust Company, was the title owner for the owners and developers of Pennington Hills Second and Third Additions. And the record reveals that one Steve Pennington handled the development for the owners and that he cleared, graded and straightened the channel of Turkey Creek.· This evidence is consistent with an intent on the part of the dedicator to prevent obstruction of the natural channel of Turkey Creek, an intent which would permit the use of portions of the drainage easements for yard space. Otherwise, as the evidence showed, some short lots would result if parts of the drainage easements could not be used in this manner. The evident intent of the dedicator was to promote the sale of the platted lots rather than reduce their salability by decreasing their value for residential purposes with a structure such as the proposed drainage channel. Large lots rather than short lots accomplish this purpose. Furthermore, the drainage easements were dedicated prior to the time that the flood potential of Turkey Creek became known, and the easements followed the natural channel of Turkey Creek rather than a course which would have increased the drainage capabilities of an improved channel.

■ When granting or denying injunctive relief, courts of equity exercise discretionary power, and a judgment granting an injunction will not be reversed unless the trial court clearly abused its discretion. Harrison v. Perry, Okl., 456 P.2d 512, 516 (1969). An intention to prevent obstruction of the natural channel of Turkey Creek fully satisfies a purpose and use for a drainage easement. Considering the evidence of the facts and circumstances surrounding the dedication of the drainage easements, the trial court did not abuse its discretion when, based upon a misuser of the drainage easements, it enjoined the City from entering plaintiffs' properties

**438**

subject to the easements for construction of the proposed drainage ditch.

The judgment of the trial court is modified to enjoin the City from using plaintiffs' properties for the proposed drainage project, including their properties subject to the drainage easements, until the City has condemned their interests in the properties or otherwise compensated them for the proposed use of the properties, and as modified, the judgment is affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN and HODGES, JJ., concur.